LipscoMB, J.
We will take up the several supposed errors and dispose, of them in the order in which they have been presented.
To dispose of the first, we will inquire whether, from the character of the note sued on, it was necessary to establish or aver any such privity between Sturedevant & Co., and Cock the indorser. It is laid down by Chancellor Kent that “if the note be payable to B or bearer, it need not be indorsed; and it is the same in effect as if tlie name óf B had been omitted. The bearer may sue in his own name; and if his right and title or the consideration be called in question, he must then show that lie came by the note bona fide and for a valuable consideration.” (3 Kent. Comm., 78.) And again, the same learned author, in the next page, in treating of the rights of the holder of such paper, says, “Possession \s prima facie evidence oí property in negotiable paper payable to bearer or indorsed’in blank; and the bearer, though a mere agent, or the original payee, when the indorsement is in blank, may sue on it in ills own mime without showing title, unless circumstances appear creating suspicion. The bona fide holder can recover upon the paper though it came to him from a person who has stolen or robbed it from Hie true owner, provided lie took it innocently in the course of trade for a valuable consideration, and not overdue and under circumstances of clue caution; and he need *164 not account for Ills possession of it, unless suspicion he raised.” The same doctrine is laid down by Judge Story, in his Commentaries on Promissory Notes; and he says, ‘"Although "a note payable to bearer is, as we have seen, transferable by mere delivery, it may also be transferred by indorsement of the payee, or of any other subsequent holder. In such a case the indorser incurs the same liabilities and obligations as the indorser of a negotiable note, payable to order, from many of which, in the case of a mere transfer by delivery, he is exempt. When a note is originally payable to bearer, and is indorsed, it would seem, on principle, that the holder might, as against the maker, declare upon it as bearer or indorser, at his election.” (Sec. 132.) Prom the opinions of these distinguished jurists, just cited, it would seem clear that no privity need be averred or established between the indorser Cock and Sturedevant & Co.; that as between the maker of the note and the holder of it, the legal effect is tiie same as if the names of Sturedevant and Co., liad been omitted. The holders could have sued the maker as though the promise had been directly to them; such is the; legal effect of the maker’s promise in the note. It is a promise to the holder and may be so treated. Had Cock, from whom the holders obtained the paper, stolen or robbed it from the true owner, the holders obtaining it, as they aver, for a valuable consideration in the due course of trade and before due, they could have recovered from the maker, and they would not he required to show their title to it until it was impeached. The liability of the maker to the holder is in no degree affected by the fact of the indorsement He is liable in any event. The consequences to the indorser are, however, materially different from what would have been the case if it liad passed to the holder by a more delivery. In the latter ease no responsibility would have rested upon him. But his indorsement made him liable to the holder, provided the maker did not pay when the note fell due, and he should have notice thereof, or, under our statutory law, suit should have been brought against the maker in due time. It is a matter of common occurrence in business transactions when a note payable to bearer is offered by the holder, to indorse it for the purpose of giving it additional credit, when the responsibility of the maker might not be satisfactorily known. And to require the purchaser or holder of the note to account for the manner in which it had come into the bands of the person who so indorsed it would be directly in opposition to the principles of the law regulating commercial paper already cited. It would result in destroying, to a very great degree, the negotiability of snob paper. A majority of the court believe, therefore, that the court below did not err in overruling the demurrer to the petition.
The second assignment can be easily disposed vf. The plea of a failure of consideration was not only no defense in law to a suit on a note after it had been negotiated before due, but even if the snjt liad been between the original parties to the note, and if it had never been negotiated in the manner in which it was pleaded, it constituted no defense to the action. It averred that the note liad been given for the purchase of a mill, warranted; that if it did not work equal to the warranty the defendant was to send it to Clinton at the cost of the paj'ee in the note. The appeal averred that it had not worked as well as it liad been warranted (o do and was worthless, of which the payee had notice. But it did not aver that the mill liad been sent to Clinton, or offered to be sent there. Such a plea would have been had on demurrer even had the suit been between the original parties. But the note having been negotiated before it fell due, such a defense, when well pleaded as to its form,, could not be received.
There is nothing in the third assignment of error. The court clearly did not err in refusing a new trial.
To the fourth assignment it is sufficient to say that, after the demurrer and answer had been overruled, the record shows that the parties announced themselves ready for trial and went to t.lie jury. A verdict having been returned affirming in its character the truth of the petition, it is not for the de- *165 fenclant belovv-to say that the jury had no issue before them. lie not haYing pleaded over, the judgment would have been good against him without the intervention of the jury. And the verdict cannot impair its effect.
The last ground taken is entitled to some consideration — “that the judgment final was rendered against Cock without there being an interlocutory judgment.” It is believed, however, that it presents more a question of form than substance.
It would have been more accurate had the record in the rendition of the judgment shown that the plaintiff was entitled to judgment against. Cock, the indorser, by default; but since the act of 1848 no judgment, nisi or interlocutory, was required previous to the final judgment after the fourth day of the term, where the defendant has failed to file his plea. (Hart. Dig., art. 812.) The taking a judgment against the indorser after the verdict against the maker, without noticing- that it was by default, though informal, was substantially correct.
Again, the indorser is not seeking to reverse the judgment, and it is therefore to be inferred that he is satisfied with it as it stands; and it cannot in anyway prejudice the rights of the maker of the note, because lie can claim no advantage from the judgment against the indorser. It is true, that if for any cause wé liad reversed the judgment against the maker, it would have been a reversal as to .both; but when the maker shows no ground for reversing the judgment against himself, who alohe is complaining, we would not reverse because that an error had intervened as to the indorser, who liad not complained.
Judgment affirmed.