### H. MASTERSON v. MANSFIELD & ROOT ET AL.

#### Decided February 9, 1901.

**1.—Partnership—Power of Partner to Bind Firm by Note for Borrowed Money.**

In order for an implied power to exist in a partner to bind the firm by partnership notes for borrowed money, the business must be of a character which makes frequent resort to borrowing a necessity not existing by reason of embarrassment or the happening of some fortuitous event, but for the advantageous prosecution of even a prosperous business.

**2.—Same—Firm Name Must Be Used.**

Where a partner undertakes to bind the firm by the issuance of commercial paper, in the absence of express authority or some other fact fixing the firm's liability, the paper must be executed in the firm name, or else in the name commonly used by the firm in transacting its business.

**3.—Same—Case Where Partner Had Not Implied Power.**

For facts held to sustain a finding that no implied power existed in a partner to borrow money on the firm name, see the opinion.

**4.—Practice on Appeal—Issue of Law or Fact.**

Whether or not there is any evidence on an issue is a question of law, and not of fact, as to which the finding of the Court of Civil Appeals is not binding on the Supreme Court.

Appeal from Harris. Tried below before Hon. William H. Wilson.

*H. & A. R. Masterson* and *Love & McCord,* for appellant.

*E. T. Hamblen,* for appellees.

GILL, ASSOCIATE JUSTICE.—Appellant, H. Masterson, sued H. P. Mansfield and W. B. Root as partners and makers of two promissory notes payable to their own order and indorsed by them and one J. L. Hudson, to the appellant.

The appellee W. B. Root filed a separate answer in which he denied the execution of the notes sued on, and denied the partnership as alleged by the plaintiff, and also denied the authority of Mansfield to bind him or the alleged partnership by the execution of the notes.

A trial by jury resulted in a verdict and judgment in favor of plaintiff against defendants Mansfield and Hudson for the amount sued for, but that plaintiff take nothing against the defendant W. B. Root. The plaintiff alone has appealed.

The facts about which there is no dispute are briefly these: In 1898,

Kuhner, Mansfield and Neese were operating a bank at Laporte, Texas,. under the firm name of "The Bank of Laporte." They also engaged in the real estate business under the firm name of the South Texas Land Company. In February, 1898, W. B. Root bought the interest of Kuhner, both in the bank and real estate business, and thereafter, on May 7, 1898, Neese withdrew from both enterprises. Neither the bank nor the real estate business had prospered, and at the date of the withdrawal of Neese the bank was in difficulties on account of the demands of depositors. After Neese's withdrawal, Mansfield and Root, after some difficulty, borrowed from T. W. House· the sums of $500 and $503.65 upon notes signed "Bank of Laporte, Mansfield & W. B. Root." No other sums were borrowed by the firm in aid of the bank. Mansfield did not put in his pro rata in the bank while it was owned by Mansfield, Neese and Root, so the latter induced Mansfield to go to Fort Worth and borrow money on his own responsibility to make his deficit good. Mansfield went to Fort Worth about the ―― day of June, 1898, and succeeded in borrowing $2500 by pledging collateral belonging to his wife. This relieved the necessities of the bank and enabled them to meet the demands of depositors. The deposits had never averaged more than two thousand dollars, and in all its history it made only two small loans to customers. The only money ever borrowed on the bank's account was that procured from T. W. House on the two notes above mentioned. All the business of the bank was done in the name of the "Bank of Laporte," Mansfield being cashier, and Root occasionally acting as assistant cashier.

The real estate concern did no business after the withdrawal of Neese, but its business had theretofore been done sometimes under its own firm name and sometimes in the name of the partners composing the firm.

The testimony of Mansfield and that of Root is conflicting as to whether any partnership actually existed between them after the withdrawal of Neese, but the circumstances strongly support the statement of Root that they proceeded at once to wind up the affairs of the old partnership, and that their association thereafter had no other object.

The notes sued on were drawn by Mansfield, and were dated the 13th day of June, 1898. Mansfield signed them "Mansfield and Root," and they were payable to the order of "Mansfield & Root." They were each for the sum of $2500, due respectively twelve and eighteen months after date, bore 8 per cent interest, and contained the usual 10 per cent attorney fee clause. Mansfield wrote across the back of these notes "Mansfield and Root," and turned them over to one J. L. Hudson to procure money thereon. Hudson, who officed in the same building as Masterson, negotiated them to Masterson for $4000, of which $2500 was paid in cash, and Masterson gave his due bill without interest, due in thirty days, for $1500. Masterson had Hudson to indorse the notes also.

According to the testimony of Masterson and Hudson the due bills were paid at the end of the thirty days. According to Mansfield they were paid in a week or two from the negotiation of the notes. Certain

statements in the ex parte deposition of Masterson and other facts and circumstances appearing in evidence were sufficient to require the court to submit the issue as to whether the notes were made and negotiated subsequent to the publication of notice of dissolution of the partnership, which occurred on June 22, 1891.

Mansfield had no express authority from Root to issue the notes, and Mansfield borrowed the money for his own purposes, and not for the benefit either of the banking partnership or the real estate concern. According to his own testimony he held the money to protect himself against his individual note made at Fort Worth, and none of the money borrowed ever went to the use of either partnerships. He did not advise Root of his acts, nor did Masterson advise Root of the existence of the notes, or of the fact that he held them, until fourteen months after their date, and this though there was published notice of the dissolution of the partnership on June 22, 1898, in the Houston Post and other papers, and though Mansfield sued Root for $30,000 damages on account of the dissolution of the partnership about the 1st of July of that year in the District Court of Harris County. Masterson resided in Houston, Harris County, and was a lawyer. Laporte is within thirty miles of Houston, and is connected with it by telephone, telegraph, and rail. Masterson loaned the money on the notes without inquiry of Root, and without consulting any person but Hudson and Mansfield. The latter was insolvent at the time, and Root was amply solvent. Masterson knew that he was acquiring the notes direct from Mansfield, and that Hudson was not the owner, but a go-between.

The controverted questions are: (1) Was the partnership in whose name the notes were issued of such a character as to clothe the partner Mansfield with the implied power to borrow money in the partnership name? (2) Were the notes acquired before the dissolution of the partnership and the publication of notice to that effect? (3) Did Masterson loan the money on the notes in good faith, acquiring them in the usual course of trade and without notice of Mansfield's fraud or want of authority to issue them?

The facts of this case present some extraordinary features, but the rights of the parties must be measured by the rules ordinarily applicable to partnerships and which control the power of a partner to borrow money and bind the firm.

The assignment of error first urged in appellant's brief complains of that part of the charge of the trial court which instructs the jury that there is no evidence of Mansfield's express authority to issue the notes sued on, and directing them to address their investigation to the question of implied authority resting upon the nature of the partnership for the benefit of which the notes purport to have been issued. In this we think the court committed no error. It is insisted that certain portions of Mansfield's evidence present the issue, but after a careful examination of his entire testimony we are of opinion that, considered in its entirety, it negatives the idea that he had express authority. The

matters to which he refers as clothing him with express authority culminated in· the Fort Worth loan, and that loan relieved the exigency which rendered it necessary, and his testimony as to facts and circumstances occurring after his return from Fort Worth could, if it were true and not nullified by other statements of his, at most present the issue of implied power or estoppel. The financial statement of the affairs of the firm was made in view of the proposed Galveston or Houston loans, and had served its purpose when the Fort Worth loan was consummated.

The tenth assignment complains of a portion of the court's charge which it quotes as follows: "The nature of the business must have been such as made the frequent resort to borrowing a necessity for the advantageous prosecution of even a prosperous business, and which contemplated the periodical borrowing of money, regardless of any necessity for borrowing." The assignment does not accurately quote the portion of the charge assailed. The exact language used is here given: "For an implied power to exist in a partner to bind the firm by partnership notes, the business must be of a character which makes frequent resort to borrowing a necessity, not existing by reason of embarrassment or the happening of some fortuitous event, but for the advantageous prosecution of even a prosperous business."

The objection urged to this portion of the charge is that it erroneously defines the nature of a partnreship from which the right of a partner to borrow money and bind the firm may be implied. In Randall v. Meredith, 76 Texas, 669, Justice Stayton quotes with approval the following from Kimbro v. Bullitt, 22 Howard, 268: "Whenever the business, according to the usual mode of conducting it, imports in its nature the necessity of buying and selling, the firm is then properly regarded as a trading patnership, and is invested with all the powers and subject to all the obligations of that relation." Quoting from Bates' Law of Partnership, 327, he continues: "If the partnership contemplates to periodical or continuous or frequent purchasing, not as incidental to an occupation, but for the purpose of selling again the thing purchased, either in its original or manufactured state, it is a trading partnership, otherwise not." Justice Stayton adds: "If there are those not embraced within this definition in which each partner is clothed with power to borrow money, they may be recognized by the character of the business pursued, which makes frequent resort to borrowing a necessity, not existing by reason of embarrassment or on account of some fortuitous event, but for the advantageous prosecution of even a prosperous business."

The implied power is dependent not on whether the act be necessary, but on whether it be necessary to carry on the business in the usual way. Bates on Part., 320.

In giving the charge complained of the court evidently sought to apply the rules of an ordinary trading partnership to a firm engaged in the real estate or banking business, in order that the jury might determine whether the firm in question came within the definition

Neither banking nor buying and selling real estate on commission comes strictly within the definition of a trading partnership, and yet either may be so conducted as to clothe the partners with all the implied powers of members of a trading partnership.

In the case of Freeman v. Carpenter, 17 Wisconsin, 30, the court held that under the facts of that case the business of the defendant firm, consisting of a land agency and banking and money brokerage, carried with it the implied power of each partner to borrow money and bind the firm, but the court recognized the general rule for ascertaining what were trading partnerships, and used the following language: "All the authorities say that if the act of borrowing is necessary for the successful carrying on of the business of the firm, then the law implies an authority to do it. * * * If the note was executed for any thing for which the firm had use, or which from the nature of the company was necessary and usual to the successful prosecution of its operations, then it becomes a charge against the firm."

The portion of the charge quoted in the assignment does not even contain an entire sentence but is part of a lengthy paragraph, and should not be construed as standing alone. The entire paragraph 4 is lengthy and need not be set out here. Considered in its entirety, it furnished the jury with clear and sound rules for their control in determining the nature of the partnership and the existence of the implied power to borrow. The assignment is without merit.

Appellant insists that the firm of Mansfield & Root were engaged in the banking business, and that the nature of the banking business is such as to carry with it necessarily the implied power of the partners to borrow money.

We are not required to decide the question. The articles of the copartnership, of which W. B. Root and Mansfield were the successors, declared among other things that the banking partnership should be carried on under the firm name of the "Bank of Laporte," and the undisputed evidence is that the business of the banking partnership was invariably done under that name. In executing these notes Mansfield did not use the name of the banking firm, nor the names of the individual members of the banking firm, but used, both in signing and indorsing them, the name "Mansfield and Root," a name which had been sometimes used by the partners in the transaction of the business of the real estate firm, but never in the business of the bank.

It seems to be fairly well settled that in order for a partner to bind his firm by the issuance of commercial paper, in the absence of express authority, or some other fact fixing the firms liability, the paper must be executed in the firm name, or else in a name commonly used by the firm in transacting the firm's business. This rule is recognized in Freeman v. Carpenter, supra, and is laid down by Tiedeman in his work on Commercial Paper, sections 104, 105.

Here Masterson, if acting in good faith, dealt with a partnership whose firm name by the purport of the paper was "Mansfield & Root."

If any such firm existed at that time it was a real estate firm, and not a banking firm.

Masterson, in lending the money upon the notes in question, was chargeable with notice of the nature of the business in which the firm was engaged, and the note not being in fact executed for partnership purposes, but in fraud of the other partner, his right to recover in any event must depend on whether the nature of the business in which the firm of "Mansfield & Root" were engaged clothed each partner with the implied power to borrow money on the firm's name. The test is not in what enterprises the individuals H. P. Mansfield and W. B. Root were embarked, but in what was the firm in whose name the notes were given engaged?

According to appellant's contention, the jury by their verdict clearly indicated that they decided in favor of appellee Root upon the issue alone of implied power, that part of their verdict being in response to paragraph 4 in the latter part of the court's charge and in which that issue was clearly and correctly submitted. We are of opinion that the facts are sufficient to sustain their finding that no such power existed.

If it be true, as contended by appellant, that the jury found in favor of W. B. Root alone on the issue of want of implied power, then the complaints against other portions of the charge bearing on the question of notice, purchase in good faith, and as to the date of the purchase by Masterson, become immaterial, but we are of opinion that the assignments complaining that there was no evidence authorizing the submission of those issues are without merit. There were facts and circumstances in evidence which required their submission, and it would have been error on the part of the trial court to refuse to do so.

We deem it unnecessary to notice at length any of the other assignments. They present no reversible error, and the judgment will be affirmed.

*Affirmed.*

ON MOTION FOR REHEARING AND TO CORRECT FINDINGS OF FACT.

GILL, ASSOCIATE JUSTICE.—We have carefully considered the motion for rehearing, and in connection therewith have again examined the record. We have found no reason to change our opinion as to the proper disposition of the appeal.

Appellant complains among other things of our finding that it was shown without dispute that all the business of the bank was done in the firm name of the "Bank of Laporte," and directs our attention to the testimony of the witnesses. Heyne and Moody and to the checks, notes, etc., in evidence. The testimony of both Moody and Heyne sustains the finding. The checks, notes, etc., are headed "Bank of Laporte, Mansfield & Root," and are signed either Bank of Laporte, Mansfield & Root, or by one or the other of the owners as cashier or assistant cashier. The articles of copartnership provide that the business of the bank be

conducted under the firm name of the "Bank of Laporte." We have simply held that the addition of the names of the owners of the bank did not change the legal effect of the proof. Nor does the existence of an account in the name of Mansfield & Root on the books of the T. W. House Bank change the result. We have found the facts as we construe the record. Whether there is any evidence on an issue is a question of law, and our finding that there is none, without setting out the testimony itself, can not prejudice appellant's rights on writ of error to the Supreme Court. The same may be said of our other findings of which appellant complains. The record goes up on writ of error, and the Supreme Court, in disposing of the question, will not accept our finding, but will inspect the record. Were it otherwise, we would willingly and patiently set out the evidence upon which our findings of fact are based. It is well known, however, that this is neither usual nor necessary. We are of opinion that the motion should be overruled and it is so ordered.

*Overruled.*

Writ of error refused.