DOUGLASS et al. v. LOCKHART. (No. 613.)

(Court of Civil Appeals of Texas. Amarillo. May 2, 1914. Rehearing Denied June 6, 1914. Dissenting Opinion Filed June 11, 1914.)

1. ALTERATION OF INSTRUMENTS (§ 5*)—NOTES —DESIGNATION OF PAYEE.

Under Rev. St. 1911, art. 582, providing that, in an action on a negotiable instrument by an assignee before maturity for a valuable consideration without notice, defenses between the maker and payee shall not be available, the alteration of a negotiable note by the insertion of the words "or bearer" following the name of the payee was not a material alteration.

[Ed. Note.—For other cases, see Alteration of Instruments, Cent. Dig. §§ 18–29; Dec. Dig. § 5.*]

2. BILLS AND NOTES (§ 537*)—PURCHASE IN GOOD FAITH—QUESTION FOR JURY.

In an assignee's action on a negotiable instrument, the question whether he purchased in good faith was for the jury, where the evidence raised an issue thereon.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1862–1893; Dec. Dig. § 537.*]

3. BILLS AND NOTES (§ 354*)—BONA FIDE PURCHASERS—EXTENT OF RECOVERY.

Where a purchaser of a negotiable note before maturity is not personally chargeable with fraud, he is entitled to recover its full amount from the maker, rather than the less amount paid by him, whatever the original infirmities in the note.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 904, 905; Dec. Dig. § 354.*]

Huff, C. J., dissenting.

Appeal from District Court, Lipscomb County; F. P. Greever, Judge.

Action by C. H. Lockhart against J. W. Douglass and others. From judgment for plaintiff, defendants appeal. Reversed and remanded.

H. E. Hoover and Hoover & Hoover, all of Canadian, for appellants. Adkins & Sewell, of Higgins, for appellee.

HALL, J. On April 5, 1909, J. W. Douglass, F. R. Grissom, W. L. Owen, T. L. Shahan and B. P. Mills executed three notes due June 1, 1910, 1911, and 1912, respectively, whereby, it is alleged, they jointly and severally promised to pay "to the order of Lew W. Cochran, Crawfordsville, Ind., or bearer," the amount therein specified, with 8 per cent. interest, and providing that unpaid interest should bear the same rate of interest as the principal. The first of these notes was paid and appellee became the purchaser of the last two, and this suit is filed to recover the amount thereof. Plaintiff alleged that he purchased them for a valuable and adequate consideration, without indorsement from the party in possession of the notes, and without notice or actual knowledge of any infirmity therein, and without any knowledge that defendants had any character of defense against the same, and without having reason to believe that there was any illegal-

ity in connection with the execution and delivery of the notes, but that he was in all things a bona fide purchaser. The defendants filed a joint answer, in which they admitted the execution and delivery of the notes, but denied that the plaintiff was the owner and holder of the same, or that he purchased them for a valuable consideration before maturity, without notice, and further denied that he purchased the notes in good faith, but that plaintiff took them with full knowledge that they were given as deferred payments for a certain horse, the purchase of which was brought about by certain false and fraudulent representations, which rendered the notes noncollectible; that one R. F. Dygert entered into negotiations with defendants to sell them a certain French coach stallion, named Alfonso No. 3397, representing said stallion to be an imported registered animal; that it belonged to Lew W. Cochran, a large and well-known dealer and importer, of Crawfordsville, Ind., and that he was the agent of said Cochran in making such sale and taking said notes; that he gave them a registration certificate upon the stallion; that Lew W. Cochran was well known as a large and responsible dealer in registered horses, and that upon these representations they made and executed the notes; that the horse was not a registered coach stallion nor Alfonso No. 3397, and was not the property of Lew W. Cochran, who purported to sell and warranted to defendants, and that the said Dygert was not the agent of said Cochran; that the notes as drawn and signed by the defendants were made payable to Lew W. Cochran, of Crawfordsville, Ind.; that Cochran never authorized the taking of said notes; that they were never delivered to Cochran, and that after the notes were signed by defendants the words "or bearer" were falsely and fraudulently entered into the notes after the words, "Lew W. Cochran," in order that the said Dygert might transfer said notes without the signature of said Cochran, and thus cheat and defraud defendants; that they received the guaranty of the said Cochran in consideration of the notes; that the guaranty was forged; that the horse actually sold and delivered to defendants was inferior in breeding to the said Alfonso No. 3397, and was worth at least $1,200 less than the horse they actually thought they were buying, and for which they executed said notes, and that said notes were therefore without consideration and absolutely void. Defendants further alleged that the notes had been materially altered by the addition of the word "bearer" thereto; that appellee was fully advised of these conditions, or had notice of sufficient facts to put him upon inquiry before he purchased the notes, if, in truth and in fact, he ever purchased them; that he purchased the same for far less than the face value thereof; and that in the event defendants

were held to pay any sum that they be required to pay only the amount which the plaintiff actually paid for the notes. After the evidence was in, the court instructed a verdict for the plaintiff against the defendants in the sum of $667 principal, and $288.75 interest.

[1] The first error assigned is predicated upon the proposition that the evidence raised the issue of material alteration, and this seems to be the principal question presented by the appeal. It is contended by appellee that on account of article 582, R. S. 1911, and the construction placed upon that article, even though the words "or bearer" were inserted in the note, following the name of Lew W. Cochran, after their execution, still such fact does not constitute a defense to the action. The test as to the materiality of an alteration in a written obligation, as announced in volume 1, Ruling Case Law, p. 967, is as follows:

"That is a material alteration which so changes the term of the instrument as to give it a different legal effect from that which it originally had, and thus works some change in the rights, interest or obligations of the parties. It is the effect of the act upon the instrument, and not the particular manner in which it is done, that is material, whether it be by interlineation, addition, substitution, change of words, detaching material memoranda therefrom, erasure, or by cancellation of some material provision thereof. No distinction can be maintained between the interpolation of a new clause whereby the legal effect of the instrument is materially changed and the striking out of one thing and inserting another, whereby the same result is effected. That the alteration causes actual injury is not the test of materiality, and it is equally unimportant whether the alteration was beneficial or injurious to the party who it is sought to charge on the instrument. The question is not whether such party has been or could be injuriously affected, but whether or not his rights have been materially affected—whether the contract in its altered condition is the contract into which he entered. That is material which might become material in alteration which may, in any event, alter the rights, duties, or obligations of the person sought to be charged, is material in the legal sense. Courts cannot undertake to say that he would have made the contract as altered and thus to make it for him merely because its terms are more favorable to him than those of the original instrument any more than they could be justified in a like conclusion where the alteration imports additional liability. In the one case no less than in the other, the altered paper is not the contract which the party has made, and in neither case can the courts declare it to be his contract or enforce it as such. The law proceeds on the idea that the identity of the contract has been destroyed and that the contract made is not the contract before the court, that the party did not make the contract which is before the court, and so adjudging, it cannot go further than hold him bound by it on speculations, however probable and possible that he would or ought to have entered into the altered agreement because it involved less liability than the original and only paper executed by him. Nor is the intent with which an alteration is made to be considered in determining its materiality and its consequent effect upon the validity of the instrument altered, though it may be of great importance with respect to the right of the party affected by such alteration to recover upon the original contract or consideration. An alteration of an instrument may be considered immaterial if it does not vary the meaning of such instrument in any essential particular, and if the rights or interests, duties or obligations of either of the parties are in any manner changed, or if what is written or erased has no tendency to produce a change in the meaning or language or to mislead any person."

While the general rule is that a transferee without indorsement of a note payable to order takes it as a mere chose in action, and must aver and prove the consideration, and takes it subject to all equities which may be urged against it in the hands of the transferror, yet the rule has been abrogated in this state by the enactment of the above-mentioned statute. This statute provides that any person to whom a negotiable instrument has been assigned may maintain an action thereon in his own name, and, should he obtain such instrument before maturity, by giving for it a valuable consideration without notice of any discount or of any defenses against it, he would be compelled to allow only just discounts against himself. In Word v. Ellwood, 90 Tex. 130, 37 S. W. 414, our Supreme Court held that under this statute the form of assignment, whether written or verbal, was immaterial, as the statute extended its protection to all assignees coming within its terms, though they might not have acquired their instruments in accordance with the technical rules regulating transfers under the law merchant. The Supreme Court also held in Prouty v. Musquiz, 94 Tex. 87, 58 S. W. 721, 996, that the statute placed a transferree without indorsement by the payee upon the same footing as an indorsee, and this holding is followed in Bank v. Kenney, 98 Tex. 293, 83 S. W. 368, Elmore v. Rugely, 48 Tex. Civ. 456, 107 S. W. 151, and McFarling v. Carey, 149 S. W. 766. The effect of this statute, in our judgment, is to make the alleged alteration of the instruments in question immaterial.

[2] The further point is urged by the appellants that the evidence is sufficient to raise the issue of bona fides on the part of appellee in making the purchase. It is held in Wilson v. Denton, 82 Tex. 531, 18 S. W. 620, 27 Am. St. Rep. 908, Greneaux v. Wheeler, 6 Tex. 515, and First Natl. Bank v. Chapman, 164 S. W. 900, that the validity of the title of the assignee of negotiable paper depends on his good faith in acquiring it. In Masterson v. Mansfield, 25 Tex. Civ. App. 262, 61 S. W. 505, and Ft. Dearborn National Bank v. Berrot, 57 S. W. 340, it is held that the question of good faith in the purchase of an instrument is one for the jury. We will not discuss, or in any way set out, the evidence bearing upon this issue, but content ourselves with the statement that there is sufficient evidence in the record upon which the court should have submitted it. Bolt v. State Sav. Bank, 145 S. W. 707; Jones v. Bank, 160 S. W. 126.

We have carefully reviewed the statement of facts, and under the evidence we think

the court should have submitted the issues of fraud and failure of consideration.

[3] In view of another trial, we will state that, in the event the plaintiff should be entitled to recover, his judgment should be for the full amount claimed, rather than the amount paid by him for the notes. Locke v. Citizens' National Bank, 165 S. W. 536, decided by this court, but not yet officially published.

Because the court peremptorily instructed the jury, the judgment is reversed, and the cause remanded.

HUFF, C. J., concurs in the disposition made of the appeal, but dissents upon the question of the materiality of the alleged alteration.

HUFF, C. J. (dissenting). If the note in question was changed from one payable "to the order of Lew W. Cochran, Crawfordsville, Ind.," to one reading pay "to the order of Lew W. Cochran, or bearer, Crawfordsville, Ind.," the alteration would be, in my opinion, material, and I must therefore dissent from my Associates on that question. In this case the evidence tends to show the notes were given for a horse represented to have been the property of Lew W. Cochran, a well-known breeder and importer of horses. The notes were on a printed form, with the words "payable to the order of Lew W. Cochran." There was inserted after the name of Cochran, with a pen, the words "or bearer." Cochran testified he sold no such horse, took no such notes, never saw the notes, and never authorized any person to accept the notes for him, or authorized any person to negotiate the notes for him. These notes are not indorsed. The appellee testified he paid $600 for the notes, and got them from a man who gave his name as G. M. Hatch. The appellants delivered the notes to a man by the name of Dygert. Cochran testifies that Dygert was not his agent in the transaction, and that he (Cochran) never executed the guaranty to the horse delivered to appellants with him. The appellants, or at least some of them, testified positively the words "or bearer" were not in the notes when signed by them.

I do not understand the law merchant to have been changed by article 582, R. S. 1911, to the extent of making a note drawn payable "to order" to one payable "to bearer." The effect of the statute is to change the method of proving the transfer and title to the notes. The holder of the note payable "to order" may prove its transfer, either verbally or by writing, and without indorsement, and when so proven, if made before maturity, he is protected under the law merchant as a bona fide holder, if the facts otherwise protect him as such. Under the law merchant, a note being payable to order, the legal and only proper way to transfer it was by indorsement. Tiedeman on Commercial Paper, §§ 246, 257. It has been held in this state, as to a note payable to the order of the payee and not indorsed by him, suit cannot be maintained thereon by a holder thereof other than the payee. Ross v. Smith, 19 Tex. 171, 70 Am. Dec. 327; Rosebrough v. Gorman, 6 Tex. 313; Merrill v. Smith, 22 Tex. 53; 7 Cyc. 818. Where the note was payable to order, it was required to be indorsed before it was negotiable. In other words, it was not transferred by delivery before indorsement, and the delivery of it evidenced no right to it. Indorsement was the proper and legal way to prove the transfer. On the other hand, a note payable to bearer was transferred by delivery (Johnson v. Mitchell, 50 Tex. 212, 32 Am. Rep. 602; Jackson v. Marshall, 6 Tex. 324; 7 Cyc. 560); and the holder thereof could maintain a suit to recover on such delivery. The statute provides that any person to whom any negotiable instrument may have been "assigned" may maintain an action in his own name. In Word v. Ellwood, 90 Tex. 130, 37 S. W. 414, it is said:

"The form of the transfer and whether written or verbal is immaterial."

Prouty v. Musquiz, 94 Tex. 87, 58 S. W. 721, 996, held:

"The holder of a negotiable instrument by an assignment not in writing being placed upon the same footing as an indorsee at common law, it follows that the rule of the commercial law must determine," etc.

As pointed out under commercial law, an indorsement must be shown to maintain a right of action on a note payable to order. Under the statute there must be an assignment, either verbal or in writing. The maker who executes a note payable to a named payee or order contracts that he will pay the note to the payee or to whom he shall order it paid. The statute, in dispensing with a written indorsement, does not dispense with the proof of the assignment. It, in other words, permits proof of an assignment other than by indorsement, but nowhere stipulates that the delivery is presumptive evidence of an assignment, and does not make such delivery prima facie evidence of an assignment. The mode of transferring negotiable instruments and the evidence required by the statute does not in the least change the well-known meaning of negotiable words as defined by law merchant, found in works on that branch of commercial law. Cases in this state, from the beginning, follow the meaning of negotiable words as defined by that law. I find nothing in the statute changing the meaning of "or order" to that of "or bearer." It requires proof of assignment when "or order" is used. It took an indorsement to pass the title before the statute. By the statute assignment can be shown otherwise; but an assignment must be shown. When "bearer" is used, delivery, if sufficient evidence of assignment and delivery or ownership, may be inferred from possession. I

think it will be hard to find any case holding an unindorsed note payable to order in which there is a presumption of assignment. At least I do not think the Ellwood Case and others in this state hold that the meaning of the words is changed by the statute.

It has been held by the courts that alteration affecting the negotiability of the note is a material alteration. Taylor v. Moore (Sup.) 20 S. W. 53; Simkins on Contracts (3d Ed.) p. 541. Modifying the manner of negotiating it has been held material, McCauley v. Gordon, 37 Am. Rep. 68; adding to a note the phrase "or order," see note 10 Am. Dec. on top page 271, and note 16, 86 Am. St. Rep. 95; or adding the words "or bearer." Crosswell v. Labree, 81 Me. 44, 16 Atl. 331, 10 Am. St. Rep. 238; Belknap v. National Bank, 100 Mass. 376, 97 Am. Dec. 105.

Judge Bleckley, in McCauley v. Gordon, supra, speaking for the Supreme Court of Georgia, said:

"There can be no doubt that to tamper with a promissory note so far as to insert in it words 'or bearer' is grossly improper. It verges on forgery. The introduction of such words is a material alteration, for they go to modify the manner of negotiating the instrument. Scott v. Walker, Dud. 243. Without them, or words of similar import, the instrument is negotiable by indorsement only; with them, it is negotiable by bare delivery as well as by indorsement."

So I take it under our statute, when a note is payable to order, that it is transferable by assignment alone, either verbal or in writing, and such assignment must be proven; but if a note is payable to bearer, delivery is sufficient to prove the assignment. Hence I think there is a material difference in the meaning of the two words when used in negotiable notes.

For the reasons above given, I cannot concur in the opinion of the majority.