FIDELITY TRUST CO. v. FOWLER et ux.
(No. 1576.)

(Court of Civil Appeals of Texas. Amarillo.
Nov. 12, 1919. Rehearing Denied
Jan. 14, 1920.)

1. MORTGAGES ⊂⊃105—NOTE MORTGAGE AND APPLICATION FOR LOAN TO BE CONSIDERED AS ONE AGREEMENT.

Note and mortgage and mortgagor's application for loan all bearing the same date and having reference to the same matter must be considered together as constituting one agreement.

2. PLEDGES ⊂⊃24—AUTHORITY TO "PROCURE" OR "MAKE" A LOAN NOT SUFFICIENT TO JUSTIFY INFERENCE THAT LOAN HAD BEEN MADE BY AGENT ON NOTE AND MORTGAGE PLEDGED.

Where mortgagor's application for loan appointed payees named in mortgage note as her "agents to procure or make a loan for me," third party with notice of such appointment was bound to take notice of the extent of the special authority so granted, and was not warranted in inferring that payees had loaned mortgagor the amount represented by the note, and had the right to transfer note as collateral for a loan from third party to payees; the words "procure" and "make" being synonymous.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Make; Procure.]

3. PRINCIPAL AND AGENT ⊂⊃96—AGENCY CONTRACTS CONSTRUED SO AS TO GIVE EFFECT TO PRINCIPAL'S INTENTION.

The general rules for the interpretation and construction of contracts are applicable to contracts of agency, and such contracts will be construed so as to give effect to intention of principal in creating the agency.

4. PRINCIPAL AND AGENT ⊂⊃96—AUTHORITY TO BE EXPRESSLY OR IMPLIEDLY GIVEN.

Authority is never to be extended by mere construction beyond that which is expressly given or which is necessary and proper to carry the authority so given into effect.

5. PRINCIPAL AND AGENT ⊂⊃147(3)—PERSON DEALING WITH SPECIAL AGENT CHARGEABLE WITH NOTICE OF EXTENT OF AUTHORITY.

The authority of a special agent must be strictly pursued to bind principal, and a person dealing with such agent is chargeable with notice of the extent of the authority.

6. BILLS AND NOTES ⊂⊃343—WHERE TRANSFERROR'S FIDUCIARY CHARACTER APPARENT FROM ACCOMPANYING PAPERS, TRANSFEREE TAKES WITH NOTICE.

Where the expression of the holder or transferror's fiduciary character appears from the papers accompanying the note, the purchaser takes it with notice of the transferror's limited authority to negotiate it.

7. BILLS AND NOTES ⊂⊃525—EVIDENCE SUFFICIENT TO SHOW BAD FAITH ON PART OF TRANSFEREE.

Evidence *held* to sustain finding that transferee of note with notice that transferrors were makers' agents with authority "to procure or make a loan" did not act in good faith in taking note.

Appeal from District Court, Crosby County; W. R. Spencer, Judge.

Suit by the Fidelity Trust Company against E. A. Fowler and wife. Judgment for defendants, and plaintiff appeals. Affirmed.

Dabney, Goggans & Ritchie, of Dallas, for appellant.

J. W. Burton, of Crosbyton, for appellees.

HALL, J. We adopt appellant's statement of the nature and result of the suit, as follows:

"This was a suit instituted by the Fidelity Trust Company, on August, 7, 1918, in the district court of Crosby county, against E. A. Fowler and wife, Jessie M. Fowler, seeking to recover judgment for the amount due on one certain negotiable promissory note for $4,500, dated July 21, 1917, executed by the said defendants, payable to the order of Offutt & Potter, a copartnership, composed of C. P. Offutt and F. M. Potter, due August 1, 1927, bearing interest at the rate of 6 per cent. per annum, payable annually on the 1st day of August in each year, providing that the holder of said note might declare the same due and payable upon failure to pay any installment of interest as it accrued thereon, and also providing for 10 per cent. attorney's fees if placed in the hands of an attorney for collection. Plaintiff further sought to foreclose a mortgage executed by said defendants to Offutt & Potter of even date with said note, conveying certain land therein described. Plaintiff alleged that before the 1st day of August, 1918, the date of maturity of the first interest coupon, said note and mortgage were transferred by the said Offutt & Potter to plaintiff for a valuable consideration, whereby the plaintiff became the legal and equitable owner and holder of said note and mortgage before maturity for value and an innocent purchaser thereof. Plaintiff also alleges that the interest coupon attached to said note maturing August 1, 1918, was not paid by said defendants, and thereafter the plaintiff declared said note due and payable, and placed the same in the hands of an attorney for collection, and promised to pay said attorney the sum of 10 per cent. of the amount due thereon as attorney's fees. The defendants filed an answer, admitting the execution and delivery of said note and mortgage to Offutt & Potter, but denying that they received any consideration therefor, that same was procured from them by said Offutt & Potter through fraud, and that the said Offutt & Potter had released said note and the lien of the mortgage securing same by duly executed release filed for record in the deed records of Crosby county, Texas. They also alleged that the plaintiff acquired said $4,500 note by taking same as collateral security for a loan of $4,000 made by plaintiff to said Offutt & Potter. The defendants also alleged that at the time plaintiff accepted said note as collateral security it had before it the written ap-

plication of the defendant Jessie M. Fowler to Offutt & Potter, made in connection with the loan represented by said note, and knew of the restrictions placed thereon by said Jessie M. Fowler. Defendants admitted that plaintiff was entitled to recover on the note and mortgage sued thereon unless such right was defeated in whole or in part by matters set up in their original answer. The court found that the plaintiff ought not to recover of the defendants by reason of the execution and delivery of the note and mortgage. sued on, and that said. note and 'mortgage should be canceled, and the lien thereon against the land described in said mortgage canceled and held of no further effect."

The controversy is presented here upon six assignments of error, grouped, followed by this proposition, urged under all of the assignments:

"Appellant, having purchased before maturity the note and mortgage sued on for a valuable consideration, in good faith, and without actual notice of the lack of consideration therefor, or want of authority to sell in the person from whom it purchased, is not chargeable with such defenses against the note, although it had knowledge of facts which might have put an ordinarily prudent person on inquiry, which inquiry might have disclosed such facts."

The note and mortgage above described were introduced in evidence, also a written application made by Mrs. Jessie M. Fowler to Offutt & Potter for a loan of $4,500, which recites in part:

"I, the undersigned, Jessie M. Fowler, of Crosbyton, Tex., county of Crosby, state of Texas, do hereby appoint Offutt & Potter, Woodward, Okl., my agents, to procure or make a loan for me of $4,500, for the term of ten years, at six per cent. per annum, to be paid annually, principal and interest payable at such place as the lender may direct and secured by first mortgage of approved form on real estate, described as follows: * * *

"And for the purpose of procuring said loan I represent and guarantee that the answers to the following questions are true and correct, and I have suppressed no information about my property which would affect its value. * * *

"For what purpose is the loan wanted? Answer: To take up vendor's lien note and to establish permanent improvements. * * *

"I understand the loan is granted on the representations herein made by me as to said premises and the title to the same, and I do solemnly declare that said representations are true in every particular, and I do hereby constitute and appoint Offutt & Potter my attorneys irrevocable, for me and in my name, place, and stead, to procure this loan from any person, persons, or corporations, and to forward to the holders of notes for principal and interest the interest money as the same becomes due from time to time, and the principal, whenever it may from any cause become due and payable, hereby ratifying and confirming all that my said attorneys may do in the premises as fully as if done by myself."

There was also introduced a report of the examiner approving the security offered and appraising it at $13,000, reciting, among other things: "Negotiated by Offutt & Potter, Woodward, Okl." The note, mortgage, and application for the loan were all dated July 21, 1917. Lester W. Hall, vice president of appellant company, testified that appellant was the owner of the note and mortgage; that it acquired them from C. P. Offutt, a member of the firm of Offutt & Potter, by lending that firm $4,000 on a demand note, and taking the $4,500 note as collateral security. The demand note for $4,000 executed by Offutt & Potter recites that Offutt & Potter had delivered to appellant the $4,500 note "as collateral security for the payment of the foregoing and for any other present or further indebtedness or liability of the undersigned to said company." The witness Hall further testified that at the time appellant acquired said $4,500 note as collateral there was also presented to him, as the officer of said bank who had the matter in charge, the application, signed by Mrs. Jessie M. Fowler, and the examiner's report; that he handled the whole transaction; and that in acquiring the $4,500 note for appellant he relied on the statements contained in said application, the examiner's report, the note and mortgage, and each of them, as being true and correct, and was induced by the statements contained in each of said instruments to pay the consideration for said $4,500 note; that is, to take it as collateral for the demand note for $4,000 made by Offutt & Potter. Appellee E. A. Fowler testified that they made the $4,500 note, but never received any money on it; that after its execution it was released, and he and his wife executed new papers for the different loans, and received the money on the second set of papers; that they never authorized Offutt & Potter to put up the $4,500 note as collateral for any of their personal obligations; and that neither he nor his wife ever authorized Offutt & Potter to get less than $4,500 on the note. They introduced in evidence a release dated October 11, 1917, duly recorded, releasing them from liability on the note. They also introduced a mortgage securing the last obligation upon which they received the money.

"It is well settled by uniform holdings of our courts that two deeds or instruments of writing, executed at the same time between the parties thereto, both referring to the same subject-matter, are to be taken as parts of the same contract and as forming one entire agreement." Ferguson v. Dodd, 183 S. W. 391, 393; Sanger Bros. v. Brooks, 101 Tex. 115, 105 S. W. 37.

[1-4] Since the note and mortgage sued upon and the application for the loan, signed by Mrs. Fowler, all bear the same date, and were made with reference to the same matter, they, under this rule, must be consid-

ered together as constituting one agreement. It is contended by appellant that there is nothing in any of these instruments or in any way connected with the matter which would put the trust company upon notice and in any way affect its good faith in the acquisition of the note and security. In this connection it is insisted that, because in the application for the loan, which is in effect an appointment of Offutt & Potter as the special agents of appellees to negotiate the loan, they are appointed "agents to procure or make a loan for me," the trust company was warranted in inferring that Offutt & Potter had already loaned Fowler and wife the amount represented by the $4,500 note. We think such a construction of the language of the application would be strained.

"The general rules for the interpretation and construction of contracts of agency are applicable to contracts of agency. In accordance with these rules and as the relation of agency is founded on the intention of the principal, it is a cardinal rule of agency that every ground of authority should, if possible, be so construed as to give effect to the intention of the principal in creating the agency. * * * However, in the absence of proof to the contrary, the power is to be exercised for the benefit of the principal about his private business, and presumably is limited to acts of the kind indicated by the appointment. Within these limits the authority is to be fairly and liberally construed so as to effect, and not defeat, its design and object, and, if some of the powers conferred seem conflicting or repugnant, a construction should be found to give, as nearly as possible, full effect to their part of the authority granted. The language, oral or written, used in clothing an agent with his authority, should be given its ordinary and natural meaning in view of the principal's purpose, and not an unreasonable or strained construction, either to enlarge or restrict the agency, and the authority is never to be extended by mere construction beyond that which is expressly given or which is necessary and proper to carry the authority so given into effect." 2 C. J. (Agency) § 198.

If Offutt & Potter had been authorized to procure for or make a loan to Fowler and wife, appellant's contention would have been worthy of consideration. As used, we think the words "procure" and "make" are synonymous. This opinion is strengthened by the fact that in the last paragraph of the application, where Offutt & Potter are designated as attorneys, this language is used:

"For me and in my name, place and stead, to procure this loan from any person," etc.

[5] Although Offutt & Potter were named as payees in the note, the application for the loan, which must be considered a material part of the transaction, informed appellant that they held it as agents merely and with limited authority. Being named as payees, the legal inference is that they were owners and had loaned appellees the $4,500; but where was the necessity for appointing them agents to secure the money from other parties? Lenders and purchasers of negotiable paper do not ordinarily agree to act as loan brokers for the makers of paper acquired by them. It is true that the note recites that it is given "for value received," and that "is given for an actual loan of the above amount." If the note is construed with the mortgage only, appellant must be held to be entitled to recover, as decided in Taylor v. Hudgins, 42 Tex. 244. But the rule announced there and quoted above from the Ferguson-Dodd Case compels us to take into consideration the application, which was in the hands of appellant's agent before it acquired the note. When this is done, we have a case of special agency, in which the agents acted under written authority, the extent of which was known to appellant, and where the writing authorized such agents only to negotiate a loan by disposing of a secured note in the sum of $4,500 for appellee by indorsement. The undisputed facts show that the agents and appellant disregarded the written authority; that, instead of selling the note for $4,500, the agents borrowed $4,000 from appellant upon their individual obligation and used appellee's note as collateral for such loan.

"The authority of the special agent being in its nature limited, suggesting restrictions and qualifications which may be discovered upon investigation, its scope is much more easy of determination and must not be exceeded, or, as the rule is ordinarily stated, his authority must be strictly pursued, and, if it is not, the principal will not be bound. A person dealing with a special agent, it is constantly said, 'acts at his own peril,' he is 'put upon inquiry,' he is 'chargeable with notice of the extent of his authority,' 'it is his duty to ascertain,' 'he is bound to inquire,' and 'if he does not he must suffer the consequences.' " Dowden v. Cryder, 55 N. J. Law, 329, 26 Atl. 941; National Bank of Kentucky v. Reeder, 253 Fed. 722–724, 165 C. C. A. 316; 1 Mechem on Agency (2d Ed.) § 742.

The same authority (section 977), in treating the subject of an agent's dealing with negotiable paper of his principal, announces the rule that an agent with authority to indorse negotiable paper will be confined to the making or indorsing of such paper in the legitimate business of the principal or for his benefit, and that such agent cannot, therefore, bind his principal by indorsing notes for his own benefit (section 976), and further the rule is announced that parties dealing with such an agent must see to it that his authority is adequate, and both they and the agent must keep strictly within the limits fixed to the agent's authority, or the principal will not be bound; that authority to bind the principal for a given sum will not authorize binding him for a greater sum (section 977). The question of implied authority has no place in the discussion, since appellant had actual notice of the extent of

956 SOUTHWESTERN REPORTER (Tex.

the title and possession of Offutt & Potter. The recitals of the application gave it definite information of the capacity in which Offutt & Potter held the note, and of the powers conferred upon them. The authority of such an agent is discussed by the Supreme Court in Mann et al. v. Dublin Cotton-Oil Co., 92 Tex. 377, 48 S. W. 567, and the rules governing the rights of the respective parties to such a transaction are found in the following language quoted from 2 C. J.:

"Where particular or special acts are authorized and general words are also employed, such general words are limited in their application to the particular acts mentioned, and are not to be extended beyond what is necessary for accomplishing the particular acts for which the power is given, and, if the general and particular or special clauses seem to be inconsistent, the latter are not to be rejected as repugnant to the general grant of power, but are to be regarded as limitations on such general grant." Section 200, p. 559.

"The principal will not be bound by an act of the agent in excess of his actual authority, within the above rule, where the third person has knowledge of the extent of the agent's authority, * * * as where a third person deals with an agent who is acting for himself as well as for his principal in the transaction, as such a person is chargeable with a knowledge of such facts as a proper inquiry as to the agent's power would have revealed to him." Section 203.

"Where a third person, dealing with an agent, * * * where there is written authority, * * * has or is charged with knowledge thereof, it is his duty to ascertain the nature and extent of the authority conferred and whether the agent is acting within its scope." Section 207.

"Instructions modifying or limiting the authority of the agent, which are known to a person dealing with him, are as binding upon such person as they are upon the agent, and he can acquire no rights against the principal by dealing with the agent contrary thereto. The principal may make the authority of his agent as broad or as narrow as he will, and any lawful limitations which he chooses to impose upon the agent's powers and which are not in the nature of secret instruction will be as binding upon third persons legally charged with notice of them as upon the agent himself, and if the original authority is a restricted and limited one, then such limitations form part of the power itself, and third persons must know them at their peril. * * * If specific instructions are brought home to the knowledge of a third person dealing with the agent, it cannot matter whether he is a general or special agent; in either case his power to bind his principal will be limited by these known instructions or limitations." Section 210.

"It is a general rule that the authority of a special agent must be strictly pursued, and this authority must be limited to the particular instructions given. * * * Persons dealing with such an agent must, at their peril, inquire into the nature and extent of his authority and deal with him accordingly, for, as in the case of acts and transactions of a general agent, a special agent cannot bind his principal by acts outside the scope of his authority." Section 223.

See Reese et al. v. Medlock, 27 Tex. 120, 84 Am. Dec. 611; Skaggs v. Murchison & Coleman, 63 Tex. 348; Gouldy v. Metcalf, 75 Tex. 455, 12 S. W. 830, 16 Am. St. Rep. 912.

[6] These fundamental principles are applicable to the instant case and require no discussion. Having taken the note with actual notice that the agents were transcending their authority, the next question is: What effect does this have upon the appellant's status as a holder in good faith? Where the expression of the holder or transferror's fiduciary character appears from the papers accompanying the note, the purchaser takes it with notice of the transferror's limited authority to negotiate it. 8 C. J. "Bills and Notes," § 722, and authorities cited. It is said in the note to Mee v. Carlson, 29 L. R. A. (N. S.) 354:

"But where it is known that an agent is using for his individual purpose paper belonging to his principal, the purchaser will be put upon inquiry."

The doctrine announced in the text is sustained by the cases cited in the note and by other later cases cited in the note to Stevens v. Venema, L. R. A. 1918F, 1155, note "m." The rule is expressed in 3 R. C. L. "Bills and Notes," § 289, thus:

"But, if in such case the stranger has notice of the fact of agency, his dealings and transactions respecting the paper are governed by the law of agency. He must regard the paper as the property of his principal and confine his dealings with the agent concerning it within the scope of the authority of the latter. The holder of a bill signed by an agent is charged with notice that the agent has a limited authority, and his right to sue the principal depends on whether the agent so signing did so within the actual limits of his authority. And where it is known that an agent is using for his individual purpose, paper belonging to his principal, the purchaser is charged with notice."

To the same effect is Dan. Neg. Inst. (6th Ed.) §§ 281, 855a.

In Givens v. Carter, 146 S. W. 623, Chief Justice Rainey held that the holders of notes transferred to them for the specific purpose of being used as collateral to a contract with a third party could not sell one of them and pledge the others to a different party who had notice of the transferror's authority, so as to constitute such last-named party a bona fide holder.

In declaring the liability of a bank which permitted a guardian to appropriate to his personal use funds of the ward deposited with it to his credit as guardian, Judge Ramsey, in U. S. Fid. & Guar. Co. v. Adoue & Lobit, 104 Tex. 379, 137 S. W. 648, 138 S. W. 383, 37 L. R. A. (N. S.) 409. Ann. Cas. 1914B, 667, discusses general principles ap-

plicable here. Having held that the bank was liable to the ward's estate, the inference is that the bank did not act in good faith.

However, it is not necessary for us to decide this question, as the issue of good faith in such cases in a question of fact. Forster v. E., O. & W. R. R. Co., 176 S. W. 788; Douglass v. Lockhart, 168 S. W. 382, and authorities cited. The application was at least enough to put appellant upon inquiry.

[7] The trial judge held that the facts were sufficient to impeach the good faith of appellant, and we think such finding is sustained by the evidence.

The judgment is therefore affirmed.