## MARTIN v. SECURITY NAT. BANK OF DALLAS. (No. 8906.)

(Court of Civil Appeals of Texas. Dallas. Nov. 10, 1923. Rehearing Denied Jan. 5, 1924.)

1. **Bills and notes** ⬅537(6)—**Peremptory instruction for plaintiff held warranted by evidence.**

In action on a note to the order of a joint-stock association, executed by defendant, who was a trustee of the association, and delivered by the association as collateral to its note to plaintiff's predecessor in title, evidence *held* to indisputably show plaintiff's right to recover, so as to make it the duty of the trial court to give peremptory instruction in plaintiff's favor.

2. **Joint-stock companies and business trusts** ⬅17—**Declaration of trust held to authorize trustees intrusting management of association to its president.**

Declaration of trust of an association *held* to give the trustees broad discretion, and to authorize their agreement with its president intrusting him with entire administration, management, and control of the affairs of the association.

Appeal from District Court, Dallas County; Royall R. Watkins, Special Judge.

Action by the Security National Bank of Dallas against M. R. Martin. From judgment for plaintiff, defendant appeals. Affirmed.

W. N. Coombes and Gano & Gano, all of Dallas, for appellant.

Thomas, Frank, Milam & Touchstone, of Dallas, for appellee.

JONES, C. J. On January 20, 1919, appellant, M. R. Martin, made and executed his negotiable promissory note in the sum of $2,000 to the order of Lone Star Silo Association, due one year after date, and payable at Grand Prairie, Dallas county, Tex., at which place the payee had its place of business. The note had the usual provision as to attorney fees, and, on the day of its execution, was delivered to the payee.

The Lone Star Silo Association was doing business under a declaration of trust, duly recorded in the county clerk's office of Tarrant county, Tex. At the time of the execution and delivery to the payee of the said note one Frank M. Shanklin was president and general manager of the Lone Star Silo Association. On the 29th day of January, 1919, as such president and general manager of said association, the said Shanklin negotiated a loan at the First State Bank of Dallas in the sum of $4,500, and executed the note of the Lone Star Silo Association in favor of said bank for said amount. In order to secure said loan Shanklin delivered to said bank the note forming the basis of this suit, together with other notes, as collateral security for the said loan, and indorsed said notes, "The Lone Star Silo Association, by Frank M. Shanklin, President." The appellee bank, after the execution of the said $4,500 note, and before same had matured, and before the note forming the basis of this suit had matured, took over all the assets of the First State Bank of Dallas, including the $4,500 note, and had indorsed

all the commercial paper held by said bank, including the said notes.

The said $4,500 note not having been paid at maturity, and the $2,000 note executed by appellant Martin being outstanding and in its possession as said collateral security, appellee instituted suit in the district court of Dallas county against appellant under the terms of the note, alleging briefly the execution and delivery of the note and its valid transfer by the payee to the First State Bank of Dallas; that appellee had acquired said note as a bona fide purchaser, and was an innocent purchaser for value before maturity without notice; that the payee, Lone Star Silo Association, had used the proceeds of the note, and that appellant was a trustee of said association; that, by the use of the proceeds of the note by the said payee, the payee, its officers and trustees, including appellant, were estopped to deny the validity of appellee's title; that the note was due and unpaid, and had been placed in the hands of appellee's attorneys to enforce collection, and the existence and reasonableness of attorney's fee clause in said note.

Appellant answered by general demurrer and special exceptions, and by allegations that the Lone Star Silo Association was a trust estate organized under a declaration of trust which was of record at the time of the happening of the matters alleged in appellee's petition, and under which trust agreement the title to and the management and control of the property, real and personal, of the said association, was placed in six trustees, including the right to sell or dispose of notes belonging to said association, and that no other person than said six trustees, acting jointly, could transfer said notes, and that the note under inquiry not having been so transferred, appellee had no title to same. Appellant further alleged that said indorsement of Lone Star Silo Association by Frank M. Shanklin, president, was without authority of said association, and void and not the indorsement of the association filing an affidavit in connection therewith. Appellant also alleged constructive notice to appellee of these said facts at the time of the transfer of the note to it, and also that the First State Bank of Dallas had such constructive notice at the time the note was transferred to it, and, further, that there was a failure of consideration to appellant in that the note was secured by said association by means of fraudulent acts and representations on the part of the association, and that by reason thereof the consideration had wholly failed. Appellant also alleged that the said note of the Lone Star Silo Association to the First State Bank of Dallas, at the time of the filing of this suit, had been fully paid off and discharged, and that no debt was then owing to appellee by said association.

The trial court, on the exceptions of appellee, struck out appellant's plea of failure of consideration and the plea of constructive notice to appellee of appellant's defense to the said note.

Appellant also filed three applications for permission to withdraw his announcement of "ready" and to continue the case during the trial of the case.

Upon the completion of the evidence, the court peremptorily instructed the jury to return a verdict in favor of appellee for an amount equal to the principal, interest, and attorney's fee on said $2,000 note, and this instructed verdict forms the basis for the judgment in this case.

Appellant, by appropriate assignments of error, attacks the rulings of the trial court on appellee's special exceptions, on the admission of certain evidence offered by appellee, and the failure to admit certain evidence offered by appellant, and on the court's holding that the transfer of the $2,000 note to the First State Bank of Dallas was a valid transfer by said association, on the court's refusal to grant him permission to withdraw his announcement of "ready," and on the court's action in peremptorily instructing a verdict for appellee.

We have examined the ruling of the court with reference to the introduction of evidence, and find no reversible error therein; nor do we find any abuse in the discretion allowed a trial court in the matter of overruling appellant's repeated requests for permission to withdraw his announcement of ready and permit a postponement or continuance of the case. There was no error of the trial court in sustaining the special exceptions to the portion of appellant's answer striking out his plea of failure of consideration, in that the allegations in respect thereto did not bring appellant within the rule that would permit such plea against one who had purchased the note without notice before its maturity.

[1] Was there error of the court in giving the peremptory instruction in favor of appellee? The evidence indisputably showed that appellant had executed the said note and had delivered same to Lone Star Silo Association; that Frank M. Shanklin, a few days after said note was so delivered, as the president and general manager of said association, negotiated the loan from the First State Bank of Dallas for $4,500 in favor of said association, and delivered appellant's said note for $2,000 to said bank as a part of the collateral security given to secure said $4,500 loan; that he represented to the officer of the bank with whom he was negotiating in behalf of the association for said loan that, as president and general manager of the association, he had full power to make such loan, and, upon said representation, made the indorsement on the note, "Lone

Star Silo Association, by Frank M. Shanklin, President," and had the money placed to the credit of said association. The evidence further indisputably showed that this money was checked out by means of the checks of Lone Star Silo Association, and that the association received the entire benefit of same; that at the time of the trial of this suit there was due on the association's note to the First State Bank the sum of $3,300, a sum in excess of the amount of said note. It is also an undisputed fact in evidence that appellant, at the time that the note in favor of the First State Bank of Dallas was negotiated, and during the time the money secured by means of said note was being used by the Lone Star Silo Association, was one of its six trustees. This indisputably showed appellee's right to recover in this case, and it became the duty of the court to give peremptory instruction in its favor. Word v. Elwood, 90 Tex. 130, 37 S. W. 414; Douglass et al. v. Lockhart (Tex. Civ. App.) 168 S. W. 382; Ford v. Johnston et al. (Tex. Civ. App.) 184 S. W. 303; Collins v. Cooper, 65 Tex. 460; Bankers' Trust Co. v. Calhoun (Tex. Civ. App.) 209 S. W. 826.

Appellant did not rest its case on the validity of the indorsement of the Lone Star Silo Association, as it could have done, on the facts occurring at the time of the indorsement of the said note and its possession of same. It introduced in evidence a written agreement entered into between the said Frank M. Shanklin and four of the six trustees charged by the declaration of trust with the control and management of the business of the Lone Star Silo Association, by which agreement the said Shanklin was given powers which clearly carried the power to negotiate this loan in the name and on the credit of the association, and to hypothecate the note in question as security for this loan. While this agreement was originally only signed by four of the trustees, it was afterwards confirmed and ratified by all of the trustees, and this ratification entered upon the minute books of the association. It was thus indisputably shown that the said Shanklin not only was clothed with power that apparently authorized him to bind the association in the transfer of this note to the bank making the loan, but had the actual power to do so. That portion of said agreement applicable to the question here discussed is as follows:

"Now, therefore, it is agreed by and between the said F. M. Shanklin and the Lone Star Association, acting by and through its trustees, A. P. Mitchell, V. G. Nelson, P. G. Dedmon, F. B. Potter, and J. E. C. Shanklin, duly authorized and empowered to enter into this agreement, that the entire management and control of the affairs of the said association shall be turned over and entrusted to the said F. M. Shanklin, which shall include, not only the operation and management of the manu-facture and sale of the products of the said company, but also the sale and issuance of the stock to the said company; also all property, moneys, assets and estate of the said association hereinbefore enumerated and set forth, are hereby transferred and delivered into the possession of said Shanklin to be hereinafter administered and managed by him for the use and benefit of said association, and the stockholders therein, and for the payment of all the indebtedness of the said association which is hereinbefore set forth and enumerated.

"It is specially agreed and understood that the said properties, moneys, assets and estates herein enumerated are transferred and delivered to the said Shanklin as a trust fund for the purpose of the payment of the liabilities and indebtedness of the said association herein enumerated and set forth and until the payment in full and the retirement of all the said debts and obligations that said properties and their value and proceeds cannot be diverted or used for any other purpose."

[2] It is contended that, as the declaration of trust vested all power in these six trustees, they could not delegate it to any one else, and that their attempt to vest this power in another was void, and of no effect. It is not necessary to pass upon the correctness of this proposition, for the reason that an examination of the declaration of trust discloses that these trustees did not exceed their power when they executed the agreement with Shanklin, who was one of their number.

After an enumeration of certain powers given the six trustees, this clause, still dealing with the powers of the trustees, appears in the declaration of trust:

"Generally, in all matters not hereinbefore specified, to deal with and use the trust properties and moneys and to manage and conduct the trust hereby created in any manner that to said trustees shall seem fit and to execute and make all such agreements, deeds, mortgages, releases, and instruments of all kinds, and other things as may be proper for any of the said purposes above named, and to do anything else properly incident thereto, and that to the said board of trustees may seem reasonable and proper."

This is a very broad discretion allowed the trustees as to the manner in which they shall manage and conduct the trust. It certainly would not be an abuse of that discretion to place certain duties as to the conduct of the business of the association in the hands of one of their number. Indeed, it is difficult to see how it would be practical to carry on the business of a mercantile or manufacturing association if all matters which came before it must be passed upon by six unsalaried men who necessarily are not devoting their entire time to the business. We therefore hold that, under the declaration of trust, the six trustees had the power to enter into the agreement with the said Shanklin, and that in doing so they

did not abuse the trust they were charged with carrying out.

Finding no reversible error, the case is affirmed.