## MARTIN v. CUMMER MFG. CO. OF TEXAS. (No. 8907.)*

(Court of Civil Appeals of Texas. Dallas. Jan. 19, 1924. Rehearing Denied Feb. 23, 1924.)

1. **Trial ⬅═139(1)—Verdict should be directed where reasonable minds cannot differ as to effect of evidence.**

If the evidence as a whole is all one way or so conclusive that reasonable minds cannot differ as to its effect, it is the duty of the trial judge to instruct a verdict.

2. **Bills and notes ⬅═537(5)—Directed verdict in favor of plaintiff held warranted by the evidence.**

In an action on a note to the order of a joint-stock association executed by defendant who was a trustee thereof and transferred by the president of the association to a holder for value before maturity, the defense being that the president had no authority to make such transfer, evidence *held* to conclusively show plaintiff's right to recover thereon so as to make it the duty of the trial judge to direct a verdict in its favor.

3. **Corporations ⬅═399(2)—Joint-stock companies and business trusts ⬅═17—General manager clothed with visible authority, and authority presumed coextensive with business under his management.**

A general manager of a corporation or a joint-stock association is clothed with its visible authority, and it is presumed that this authority, prima facie at least, is coextensive with the business under his management.

4. **Bills and notes ⬅═146—Uniform Negotiable Instruments Act inapplicable to transfers of note before its taking effect.**

The Uniform Negotiable Instruments Act is inapplicable to the question of the validity of the transfer of notes made before it became operative.

5. **Joint-stock companies and business trusts ⬅═17—Transferee of note payable to joint-stock association may get good title, though officer transferring not authorized to indorse it.**

Where defendant executed a note to the order of a joint-stock association of which he was trustee, if the authority of the president of the association fell short of power to bind it by indorsing the note to a purchaser, yet if his general power as manager was sufficient to authorize the sale and delivery of the note, a transferee of the note could acquire good title thereto, notwithstanding such lack of power to indorse; the form of transfer being immaterial in view of Rev. St. art. 582.

6. **Joint-stock companies and business trusts ⬅═17—President held to have authority to transfer and indorse notes.**

President of a joint-stock association held to have power under the terms of a declaration of trust and the by-laws to sell and pass title to notes payable to the order of the association, and also to fix the liability of the association by an indorsement of such notes.

7. **Joint-stock companies and business trusts ⬅═17—President of joint-stock association held empowered to do what association could do.**

Where the president of a joint-stock association was placed in charge of its business, and was held out to the public as possessing the powers of a general agent, though his authority was limited by a declaration of trust and the by-laws of the association, he could do everything in the transaction of its business that the association could do itself.

8. **Joint-stock companies and business trusts ⬅═17—Declaration of trust providing for conduct of business by president held not to constitute constructive notice by being filed of record in county clerk's office.**

One dealing with the president of a joint-stock association was not charged with constructive notice of the contents of a declaration of trust providing for the conduct of its business by its president, by reason of its being filed of record in the county clerk's office, the instrument not being of that character, that the law requires or authorizes to be registered.

9. **Bills and notes ⬅═337—Doctrine of constructive notice does not apply to purchasers.**

The doctrine of constructive notice does not extend to the purchasers of negotiable notes as it does to purchasers of property in general; the bona fides of the transaction being the decisive test of the holder's rights.

Appeal from District Court, Dallas County; Royal R. Watkins, Special Judge.

Action by the Cummer Manufacturing Company of Texas against H. G. Martin. Judg-

---

ment for plaintiff, and defendant appeals. Affirmed.

W. N. Coombes, Gano & Gano, and C. F. Greenwood, all of Dallas, for appellant.
Bird & Bird, of Dallas, for appellee.

LOONEY, J. The Cummer Manufacturing Company of Texas, appellee, a corporation, sued H. G. Martin, appellant, on two negotiable promissory notes dated February 13, 1919, executed by appellant, payable to Lone Star Silo Association, or order, in the sum of $2,500 each; the first one matured one year after date, and the second, 18 months after date, each bearing 8 per cent. interest per annum from date, and containing the usual provision for 10 per cent. attorney's fees in case of default and collection by attorney.

The appellee alleged that he was the owner of the notes by purchase and transfer from Lone Star Silo Association under a sale and transfer consummated through its duly authorized president, Frank M. Shanklin.

The appellant answered by general and special exceptions, general denial, and specially pleaded that the Lone Star Silo Association, to whom the notes were payable, was a trust estate organized under the common law, having six trustees, to whom was committed all authority of management, and that no authority had been given the president to sell or indorse the notes; that the six trustees, alone, could act in the sale, transfer, indorsement, and delivery of the notes; that the acts of its president in attempting to sell, indorse, and transfer the notes were, and are, without authority and void; of all of which facts the appellee had actual and constructive notice.

Appellant also pleaded that the notes were given by him to the Lone Star Silo Association for $5,000 worth of its stock; that at the time and before the purchase by appellant of the stock, Frank M. Shanklin and other trustees of the association represented to him that its assets exceeded $50,000, and that its indebtedness was less than $10,000; that it was solvent, making money, and that dividends were, and would be, large. Relying on these representations as being true, all of which appellant alleged were false, appellant subscribed for the stock, and, in payment therefor, executed the two notes sued upon; that there was no consideration for the notes by reason of the facts stated, or, if there was a consideration, the same failed, of all of which facts appellee had both actual and constructive notice when he purchased the same.

By a supplemental petition appellee answered by general and special exceptions, general denial, and specially as follows: That the Lone Star Silo Association was a duly organized trust estate under a common-law declaration of trust; that when the notes sued upon were executed, and when sold to the appellee, the silo association was a lawfully organized going concern, with Frank M. Shanklin its lawful president and one of its six trustees, and at and during all of these times the defendant H. G. Martin was one of its six trustees, and had actual and constructive knowledge of its financial condition; that it is apparent from the declaration of trust and the by-laws of the association that the president was its executive officer, and had authority to transfer and indorse the name of the association on said notes to the purchaser, and that appellee purchased said notes from it innocently, in good faith, for value paid before maturity of the notes; that the appellee H. G. Martin is estopped from denying the authority of the president to perform the acts involved herein, and is estopped from complaining of the sale of the stock to himself, he being a trustee and knowing and being charged with knowledge of the financial condition of the silo association when he purchased the stock. Appellee denies that he had either actual or constructive knowledge or notice that the president was without authority to transfer and indorse the notes to him, or that appellant, one of its trustees, had been deceived as to the condition of said association in regard to the value of stock when he purchased the same; that appellee did not know that appellant was one of its trustees.

The court made several rulings on exceptions, and, among others, sustained a special exception urged by the appellee to the plea of failure of consideration set up by the appellant.

The trial resulted in an instructed verdict for appellee, and judgment in his favor was accordingly rendered for the full amount of the principal, interest, and attorney's fees shown by the notes, from which judgment appellant prosecutes this appeal.

The assignments and propositions urged by appellant from 1 to 11, inclusive, in which he questions the correctness of the rulings of the trial court on exceptions, and on the admission and exclusion of evidence, after a very careful consideration are found by us to be without merit, and are accordingly overruled.

If any error was committed by the trial court in sustaining appellee's exceptions and in striking out portions of appellant's answer as complained of in assignment of error No. 3, the same is harmless, did not amount to the denial of any right to appellant, nor was the same reasonably calculated to cause, and probably did not cause, the rendition of an improper judgment in this cause; nor was the error such as probably prevented the appellant from making a proper presentation of the cause to this court.

This leaves for our consideration only one other question presented by assignment No. 12. In this assignment appellant insists that the court committed material and reversible error in directing a verdict for the appellee.

This question is reduced to the inquiry touching the power or authority of Frank M. Shanklin, president of Lone Star Silo Association, to indorse, sell, transfer, or pass title to the notes to the appellee.

The facts are substantially these: On February 13, 1919, the appellant executed and delivered to Lone Star Silo Association his two negotiable promissory notes in the sum of $2,500 each, payable to its order 1 year and 18 months after date, respectively, bearing 8 per cent. interest per annum from date, and providing for 10 per cent. attorney's fees in case of default, if placed in the hands of attorneys for collection. Default was made in the payment of these notes, the same were placed in the hands of attorneys for collection, sued upon, and the attorney's fees accrued. In the latter part of February, 1919, the silo association, through its president, Frank M. Shanklin, sold the notes in suit to appellee in consideration of the delivery to the association of a 3½-ton Wichita truck and $1,650 in cash, paid in checks. The notes were indorsed in blank on the back, as follows: "Lone Star Silo Ass'n, by Frank M. Shanklin, President." The consideration paid by appellee for the notes to the association, that is to say, the truck and the cash, were delivered and paid to it, received by it, and used in its business.

Appellee purchased the notes before maturity, in due course of business without notice, either actual or constructive, of any infirmity in law in the title of the seller, if any existed, or of any defense thereto, in favor of the appellant.

The silo association was doing business under a declaration of trust recorded in the county clerk's office of Tarrant county, and during the time of the occurrences involved in this suit Frank M. Shanklin was president of the association, and appellant was one of its shareholders and its vice president.

Touching the purposes for which the silo association was formed, and the power and authority of its president, the following references are made to the declaration of trust and by-laws adopted thereunder: The purpose clauses of the association are numerous, requiring several typewritten pages for their statement, but all matters named are germane to the central purpose, that is, for the establishment and maintenance of a manufacturing and assembling plant, or plants, for the manufacturing, assembling, purchasing, or otherwise acquiring, cement silos, granaries, water tanks, posts, cement staves, accessories, implements, machinery, tools, mechanical devices, appliances, and other things of kindred lines, and to purchase, lease, contract for, own, and hold real estate and to purchase or otherwise acquire stock and bonds of other individuals, corporations, or associations engaged in the manufacture or sale of like or kindred articles, and to sell same at wholesale or retail; to manufacture, assemble, buy, sell, import, export, and generally to deal in silos and silo material; to accumulate property and money for these purposes to purchase and otherwise acquire real and personal property such as may be suitable, necessary, useful, or advisable, in connection with these objects and purposes; to issue bonds, debentures, obligations, and secure same by mortgage, pledge, deed of trust, or otherwise; to enter into, make, perform, and carry out contracts of every kind and character for any lawful purpose.

The declaration further provides that the association may maintain offices and transact business in the states of Texas, Oklahoma, Louisiana, Arkansas, and all other states of the Union, and in its dependencies, and in the Dominion of Canada, and elsewhere throughout the civilized world; concluding the elaborate statement of the purposes with the following:

"Generally, in all matters not hereinbefore specified, to deal with and use the trust properties and moneys and to manage and conduct the trust hereby created in any manner that to said trustees shall seem fit, and to execute and make all such agreements, deeds, mortgages, releases, and instruments of all kinds, and other things as may be proper for any of the said purposes above named, and to do any thing else properly incident thereto and that to said board of trustees may seem reasonable and proper."

[1] The question presented to the court is: "Was the verdict properly directed in this case?" The rule that must govern us is well understood, and is to the effect that, if the evidence as a whole was all one way, or so conclusive that reasonable minds could not differ as to its effect, the trial judge is always authorized, in fact it is his duty, to instruct a verdict.

[2] It is our opinion that the evidence in this case is so conclusive in favor of the verdict that the trial court not only did not err in directing a verdict for the appellee, but, in view of the undisputed facts, it was his duty to dispose of the case in that manner.

The facts are undisputed that appellant executed the negotiable promissory notes sued on; that appellee became the owner thereof for a valuable consideration before maturity by purchase, transfer, and delivery in due course of business from the Lone Star Silo Association, payee, represented in the transaction by its president, Frank M. Shanklin, who was amply authorized to act in the premises as he did; and that appellee was without notice, actual or constructive, of either a real or supposed defense that appellant may have had to the notes in the hands of the original payee.

The case is on "all fours" with the case of M. R. Martin v. Security National Bank of Dallas, 257 S. W. 645, decided by this court November 10, 1923, in an opinion rendered by

Chief Justice Jones. The question in that case turned on the authority of the president of Lone Star Silo Association to bind the association in the execution of notes for borrowed money for the association, and in the indorsement and transfer of notes as collateral security for the loan. In that case a judgment was rendered on an instructed verdict on facts very similar and, in truth, in all essential respects identical with this case, and was affirmed by this court. In that case, after quoting pertinent provisions of the declaration of trust dealing with the powers of trustees, Judge Jones said:

"This is a very broad discretion allowed the trustees as to the manner in which they shall manage and conduct the trust. It certainly would not be an abuse of that discretion to place certain duties as to the conduct of the business of the association in the hands of one of their number. Indeed, it is difficult to see how it would be practical to carry on the business of a mercantile or manufacturing association if all matters which came before it must be passed upon by six unsalaried men who necessarily are not devoting their entire time to the business."

As said by Judge Jones above, it is difficult to see how it would be practical to carry on the business of a commercial or manufacturing concern, if six men must consult together and act together in consummating the numerous transactions incident to the life of such a business. The very difficulty and impracticability so apparent are strong reasons against the assumption that it was ever contemplated that such a business should be thus conducted. The declaration of trust and by-laws furnish an abundance of internal evidence that the business of the association, that is to say, the everyday routine business of the concern, should be conducted by some agent, officer, or employee selected by the trustees. Section 6 of the declaration of trust recognizes the fact that the trustees may act by and through an "officer, agent, servant, or employee." The right of trustees to adopt by-laws in harmony with the declaration of trust is recognized in section 3 of article 3 of the declaration of trust. Article 2 of the by-laws adopted provides for the election of a corps of officers, a president, vice president, and others, and article 3 defines the duties of president as follows:

"The president of the board of trustees shall preside at all meetings of shareholders, and, if present, sign all certificates, and have a general care, supervision, and direction of the affairs of the estate; he shall have power to call meetings of the board from time to time when he shall think proper, and shall call them when requested by a majority of the trustees."

[3] The authority here given "of general care, supervision, and direction of the affairs of the estate" constituted the president a general manager with the functions of a general agent. No other officer or agent of the association was actively engaged in conducting its business. Thus he was held out to the public, clothed, as he really was, with all the power of a general agent, and could perform all acts in conducting the business of the association in its daily routine that the association was authorized to do. A general manager of a corporation, or of an association of this kind, is clothed with its visible authority, and it is presumed that this authority, prima facie at least, is coextensive with the business under his management.

It was not contemplated that the board of trustees should act en bloc in transacting the routine business of the association. This is apparent from several provisions of the declaration and by-laws. Among others is the provision for stated meetings of the board in a room or place removed from their manufacturing plant. The board of trustees in fact held stated meetings as shown by the minutes thereof introduced in evidence, and, in this way, they discharged their full duty. There is only one contingency mentioned in the by-laws that requires the action of the entire board, or a majority, and that is with reference to the sale and conveyance of real estate. This is found in article 11, which reads:

"All conveyances of real estate shall be made by a majority of the board as such, under authority of a resolution of the board and executed by the president of the board of trustees, or vice president under like authority. The same is to be attested by the secretary or assistant secretary under the seal of the Lone Star Silo Association."

This being the only contingency provided for in either the declaration of trust or by-laws, for the action of the board en bloc, the maxim "expressio unius est exclusio alterius" applies, and we must conclude, therefore, that in all other transactions the consummation thereof may be committed to officers and agents acting under appointment from the board.

[4] The notes sued upon were executed and the transactions involved occurred before the Uniform Negotiable Instruments Act became operative. Therefore its provisions are not applicable in this case.

[5, 6] We hold that Shanklin, president of the silo association, had ample authority under the terms of the declaration of trust and the by-laws to sell and pass title to the notes, and also to fix the liability of the association by an indorsement of the notes. However, if it is true, which we do not admit, that his authority fell short of power to bind the association by indorsing the notes, yet his general power as manager was, in our opinion, sufficient to authorize the sale and delivery of the notes. Under this view the transaction will be controlled by the provision of article 582, Revised Statutes, which was construed by the Supreme Court in

Word v. Elwood, 90 Tex. 130, 37 S. W. 414, in an opinion by Judge Denman, who, among other things, said:

"An instrument is 'assigned' within the meaning of this statute when it is transferred from one to another. The form of the transfer and whether written or verbal is immaterial. The statute extends its protection to all assignees coming within its terms, though they may not have acquired their instruments in accordance with the technical rules regulating transfers under the law merchant. Under our construction of the statute we do not deem it important in this case to determine whether the writing on the note constituted a technical indorsement, and therefore do not answer the question certified."

This doctrine was later affirmed by the Supreme Court in Prouty v. Musquiz, 94 Tex. 87, 58 S. W. 721, 996, and in Douglass v. Lockhart (Tex. Civ. App.) 168 S. W. 382.

[7-9] The appellant being an innocent purchaser of the notes in due course before maturity, for value, and without notice, even if the declaration of trust and the by-laws had not clothed the president of the association with authority to sell or indorse the notes, still, the fact remains that he was placed in charge of its business and was held out to the public as possessing the powers of a general agent, it follows, therefore, that he could do everything in the transaction of its business that the association could itself do. Sealuy Oil Mill Co. v. Bishop Mfg. Co. (Tex. Com. App.) 235 S. W. 850. Appellee will not be visited with constructive notice of the contents of the declaration of trust by reason of its record in the county clerk's office of Tarrant county. The instrument is not of that character that the law either required or authorized to be registered. Its registration would not be notice of its existence or of its contents. Burnham v. Chandler, 15 Tex. 443; Wright v. Lancaster, 48 Tex. 256; 20 R. C. L. 342; § 3. Besides all this, the doctrine of constructive notice does not extend to the purchaser of negotiable notes as it does to purchasers of property in general. This doctrine was clearly announced in Wilson v. Denton, 82 Tex. 531, 18 S. W. 620, 27 Am. St. Rep. 908, in the following language:

"The ordinary rule of constructive notice which applies to the purchase of property is not applicable in the case of negotiable instruments. As promotive of their circulation a liberal view is taken, which makes the bona fides of the transaction the decisive test of the holder's right. He is entitled to recover upon it if he has come by it honestly."

The rule is stated in 3 R. C. L., p. 1071, § 277, as follows:

"It is now well settled, however, that the doctrine of notice as it affects the good faith of transactions generally does not apply to negotiable instruments."

To the same effect see Forster v. Enid Ry. Co. (Tex. Civ. App.) 176 S. W. 788.

For the reasons hereinbefore stated, appellant's assignments and propositions are overruled, and the judgment of the court below is affirmed.

Affirmed.