JOHN O'NEILL v. ELLEN BROWN, ADM'X

(Case No. 4533.)

1. EVIDENCE — WITNESS — BURDEN OF PROOF.—One against whom a judgment had been rendered on service of process by publication applied, under art. 1373, within proper time, for a new trial, and obtained it, but after the former plaintiff's death, whose wife, as executrix, was made defendant. The deceased plaintiff had testified on the former trial, and his evidence then given was offered on the second trial. *Held:*

(1) The former evidence was admissible on the second trial, notwithstand-

ing defendant, who had been cited by publication, was not actually present in person or by counsel.

(2) The evidence of the deceased plaintiff on the former trial being admissible, and the reason of the statute which excludes one party from testifying in regard to transactions with another party who is dead ceasing, the adverse party, also, was a competent witness.

(3) After the new trial was granted the burthen of proof did not rest as it would after new trial of a cause in which both parties were present. The new trial under the statute after judgment, on service by publication, is not alone to be a trial of the old cause of action, but a trial on the allegations of the petition for new trial and the answer thereto. In this new proceeding the former defendant becomes a *quasi* plaintiff; the burthen of proof rests on him, and he must show *prima facie* that the former judgment was wrong.

2. ACTION — PARTNERSHIP.— Ordinarily an action will not lie by one partner against another during the continuance of the partnership, to recover money alleged to have been contributed by the plaintiff to the firm, which should have been paid in by his copartner.

3. FACT CASE.— See opinion for facts insufficient to authorize the judgment of the district court.

ERROR from Grayson. Tried below before the Hon. Joseph Bledsoe.

On January 20, 1879, John Brown (the intestate of defendant in error, Ellen Brown) brought suit in the district court of Grayson county against O'Neill, plaintiff in error, and cited him by publication. He alleged that he and O'Neill were partners; that the latter was indebted to him in various sums of money, on account of the partnership business. On November 13, 1879, he recovered a judgment against O'Neill for $480.46.

On September 1, 1880, plaintiff in error filed his petition in said court, properly verified, and prayed that said judgment be set aside and a new trial granted him.

On September 20, 1881, he amended his original petition, and alleged that he knew nothing of the proceedings against him until after the judgment was rendered; that he was not indebted to Brown, or to the firm of Brown & O'Neill, at the date of the judgment; that he had a good defense to the suit, which he would have made had he known of the proceedings against him; that the judgment should be set aside, because no statement of the facts proven was made out and filed; that Brown had converted to his own use and disposed of a large amount of property belonging to the firm of Brown & O'Neill, for which he had never accounted; that it was wrong and oppressive to sell his (plaintiff's) interest in the partnership assets, and not sell the entire partnership property, and that the judgment was obtained through fraud on the part of Brown.

He prayed that the judgment and the sales made thereunder be set aside and that a new trial be granted him.

The defendant answered: 1st, by general demurrer; 2d, by special exception to that part of the petition which sought to set aside the sale of the property which had been made under the judgment; 3d, general denial.

(It does not appear that there was any action of the court upon the demurrer or special exceptions.)

Judgment for the defendant.

Plaintiff filed a motion for a new trial. This motion set out all the grounds upon which the plaintiff in error relied in the supreme court for a reversal.

The assignment of errors presented the same grounds as the motion for a new trial.

It appears from the record that in 1877 Brown and O'Neill agreed to buy a farm, farming implements and work stock, etc., and to begin the business of farming in partnership. Brown was to pay two-thirds of the purchase money and expenses, receive two-thirds of the profits, and own two-thirds of the property when paid for. O'Neill was to have the other third. Brown had a large family and O'Neill was a single man.

In the fall of 1877 they bought three hundred acres of land for about $2,700, and immediately began preparations for the next year's crop which they made, O'Neill remaining on the place until about the close of the year 1878, when he left the place for some reason — he said because Brown mistreated him. He went to Montague county, where he had lived ever since. Brown still remained and cultivated the place.

January 20, 1879, Brown brought suit against O'Neill, alleging that his residence was unknown, and recovered the judgment for $480.46, as already stated.

In December, 1879, Brown caused an execution to issue, by virtue of which O'Neill's interest in the real estate was sold, and Brown bought it for $250.

Brown died in February, 1880. His wife (defendant in error) was appointed administratrix, and in July, 1880, she caused another execution to issue, under which she bought O'Neill's interest in the personal property for $87.

The judgment in the case of Brown v. O'Neill (which is complained of in this suit) is not set out in the record though the substance of it is given.

*C. N. Buckler*, for plaintiff in error.

No briefs for defendant in error have reached the reporter.

DELANY, J. COM. APP.— The different assignments of error present a series of reasons why the court erred in overruling the motion for a new trial. The first position assumed is, that the court should have granted a new trial because the judgment in the case of Brown *v.* O'Neill was void — the court which rendered it having never acquired jurisdiction over the person of O'Neill. He was cited by publication and there was no attachment against his property.

Upon this part of the case appellant presents the following proposition: "No valid personal judgment can be rendered against a defendant, in an action not *in rem*, on a money demand, without personal service of process upon him." And he refers us to the cases of Webster *v.* Reed, 11 Howard, and Pennoyer *v.* Neff, 5 Otto.

We must decline to enter upon the discussion of this question. Our statute provides for citation by publication to non-resident defendants, and to those whose residence is unknown. R. S., 1235. Judgments rendered upon this constructive notice have often been held valid by our courts. See Wilson *v.* Zeigler, 44 Tex., 657; Lawler *v.* White, 27 Tex., 250, and many other cases.

The second assignment questions the ruling of the court in permitting witnesses to prove what Brown had testified to on the former trial. Brown had died since that trial. He was the only witness in the cause, and his testimony was reproduced upon the present trial, partly from the statement of facts and partly by the witnesses who heard him testify.

Plaintiff rests his objection to the evidence in this court on the ground that he was not present at the former trial, nor represented by counsel of his own choosing; and therefore had no opportunity of cross-examining the witness. He took the same ground in his motion for a new trial. But when the testimony was offered on the trial, his bill of exceptions shows that he objected to it on a different ground, namely, that the court had excluded his testimony on the same subject.

When the plaintiff on the last trial offered his own testimony to show that Brown had appropriated the proceeds of the crop raised on the place, it was excluded on the ground that Brown was dead, and therefore the plaintiff could not be heard. R. S., 2248. That statute seems to proceed upon the idea that the dead man cannot

be heard, and therefore the surviving litigant should not be permit-
ted to testify to any transaction with, or statement made by, the
deceased.

But we do not think that the reason of the rule would extend
to a case like this. Brown was heard upon the former trial, and he
obtained a judgment upon his own testimony; and we do not think
that the statute should have been so construed upon the last trial as
to exclude the testimony of O'Neill concerning the same transac-
tions. Runnels v. Belden, 51 Tex., 48.

But counsel for appellant insists that as he was not present, and
hence could not cross-examine upon the first trial, the testimony
then given should not have been admitted against him upon the
second. 1 Greenl. Ev., 163–64.

Under the statute, the evidence was admissible on the first trial.
R. S., 1235 and 1345. And having been properly admitted then, no
good reason appears for its exclusion upon the second trial, when
O'Neill is present and is permitted to testify.

The fifth and sixth assignments of error will be considered to-
gether. The petition in the case of Brown v. O'Neill is copied into
the record. It was a suit by one of the partners against the other,
pending the partnership, to recover certain sums of money alleged
to have been contributed by him to the firm, which amounts should
have been paid in by his copartner. There was only one item
proved which was not connected with the partnership business.
That was an item of $75, which, standing alone, was much below
the jurisdiction of the court.

In the case of Long v. Garnett (Austin term, 1883), it was held
that ordinarily such a suit could not be maintained. See 1 Texas
Law Review, pp. 253–54. We see nothing in this case which should
exempt it from that rule.

Appellant complains of the judgment rendered in the former
trial in the case of Brown v. O'Neill, in this, that it was simply a
personal judgment against O'Neill awarding execution, which was
levied on his interest in the partnership property; whereas the court,
if it took jurisdiction of the case at all, should have taken an ac-
count between the partners and awarded a sale of the partnership
property. The authorities seem to favor this view of the case.
Story on Part., sec. 350 and note 3. But the judgment is not copied
into the record, and we express no decisive opinion upon the
subject.

The seventh assignment must be maintained. We think the judg-
ment is clearly contrary to the evidence.

Ordinarily the plaintiff takes the burden of establishing his cause of action. In the original cause of Brown *v.* O'Neill the burden of proof was upon Brown. If O'Neill had been present at that trial, and a judgment against him had been set aside upon his motion, the case would have stood just as if no trial had taken place; and upon the next trial Brown would still have had the burden of proof. But when a new trial takes place, under the circumstances of this case, who has the burden of proof? The statute says that the new trial may be granted to the defendant "for good cause shown, supported by affidavit." Evidently this language indicates that the " good cause" spoken of must appear in the petition. But when the new trial is granted the parties are not sent back to try the old case as it stood upon the docket. They try upon the allegations of the new petition and the answer of the other party. Taylor *v.* Fore, 42 Tex., 256. Thus the defendant in the old case becomes, in some sort at least, a plaintiff in the new, and he would, doubtless, be bound to show, at least *prima facie,* that the former judgment was wrong and should be set aside. This O'Neill has clearly done.

It appears from the record that Brown instituted the former suit on January 20, 1879. He admits the partnership; that O'Neill was to own one-third of the property and to pay one-third of the costs and charges. He appends an exhibit of the sums which he had (as he says) paid out for the firm, running from November 3, 1877 — the date of the purchase of the land — down to December 23, 1878.

The first item in the account is a payment on the land of $1,000, made on November 3, 1877. Another, and, as it seems, the last payment on the land was made December 9, 1878, $1,740.60. He admits that O'Neill had paid more than $1,000 during the first month of the partnership.

It appears by the evidence on the last trial that both the partners lived on the land during the year 1878; that O'Neill worked faithfully on the farm during that year; that the crop made was worth from $600 to $750, and the evidence leaves no doubt on the mind that Brown got the benefit of the whole crop. The evidence also shows that for the year 1879 Brown had the use of the entire property, including O'Neill's interest, and it also shows, at least *prima facie,* that he never accounted for it. The same is true of the subsequent years down to the last trial.

Besides, it appears in the record that Brown had a large family, consisting of his wife and ten children. O'Neill alleged that his partner had, in his account, charged up against the partnership the

entire expenses of his family. It is impossible to look on the account without a strong suspicion that the charge made by O'Neill is well founded.

The account is open to grave objection in other respects, and doubtless it would not have been admitted in its present shape if O'Neill had been present at the trial. The first trial furnishes a striking proof of the truth of Chief Justice Hemphill's remark in Edrington v. Allsbrooks, 21 Tex., 189, that "notice by publication is, at least, but a miserable substitute for personal service."

Our opinion is that the judgment should be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion adopted February 14, 1884.]