## G. W. Tinsley v. W. C. Corbett.

Decided January 24, 1902.

**1.—Trespass to Try Title—Proof of Execution Sale and Judgment.**

Where in trespass to try title the plaintiff claims under an execution sale on an unsatisfied judgment on which previous executions had issued, with sales thereunder, and the indorsements on the last execution showed the result of the previous process, leaving a balance due, it was not necessary, in order to render the judgment admissible in evidence, that plaintiff should also introduce the orders of sale and each previous execution.

**2.—Judgment—Satisfaction—Right of Defendant to Purchase.**

Where a judgment foreclosing a lien on land awarded to one of the defendants, an indorser, execution over against the others in case he paid the judgment, such defendant had the same right as a stranger to purchase the land at the foreclosure sale, and, after such purchase, the right to satisfy the judgment creditor by paying balance due and taking a transfer of the judgment to himself, and his subsequent transfer of it, by sale without recourse, did not have the effect to discharge the judgment and the other defendants therein.

**3.—Deed in Fraud of Creditors.**

Evidence held sufficient to show that a deed by an insolvent, not recorded for a year after its date and reciting a consideration not in accord with the value of the land or the debt satisfied by it, was fraudulent as to creditors.

**4.—New Trial—Nonresidents—Suit by Publication.**

The application for new trial in a cause where judgment by default has been rendered against a nonresident by publication must set forth facts which, if true, would require the rendition of a different judgment, and such facts may be controverted at the hearing of the motion and evidence adduced as to their truth.

Appeal from San Jacinto. Tried below before Hon. L. B. Hightower.

*J. B. Scarborough,* for appellant.

*D. F. Rowe, T. C. Rowe,* and *Robinson & Hansbro,* for appellee.

Gill, Associate Justice.—This was a suit in trespass to try title brought by W. C. Corbett, the appellee, against G. W. and Thomas Tinsley. Personal service was had upon the latter and he answered, but did not appear either in person or by attorney at the trial. G. W. Tinsley was a nonresident of the State, and was served by publication. He did not appear either in person or by attorney of his own selection. The trial court appointed an attorney to represent him, and a trial was had resulting in a judgment in favor of Corbett for the land sued for as against both defendants. After the expiration of the term at which the judgment was rendered, G. W. Tinsley filed a motion for a new trial under article 1375 of the Revised Statutes allowing a nonresident defendant served by publication to file such a motion within two years from the date of the judgment. On a hearing of this motion the court reviewed the whole case, and thereupon overruled the motion and reiterated the former judgment awarding the land to Corbett. From this judgment G. W. Tinsley has appealed.

Briefly stated the facts are as follows: Corbett, claiming to be the owner of an unsatisfied judgment in favor of the Houston Land and Trust Company against Charles S. Reichman, Charles Tinsley, and Thomas Tinsley, had execution issued thereon and levied on the land in controversy as the property of Thomas Tinsley, one of the defendants in the judgment. The land, which was a tract of 1476 acres situated in San Jacinto County, was bought in by Corbett at sheriff's sale and the sheriff duly executed to him a deed therefor, the bid being credited on the execution. This, with the deeds connecting it with the sovereignty of the soil, constituted Corbett's title to the land in suit. G. W. Tinsley relied on a deed from Thomas Tinsley to him purporting to convey this and other land to him for a recited consideration of $2000.

Corbett, on the trial of the motion, attacked the deed from Thomas to G. W. Tinsley on the ground that it was fraudulent and without consideration and that Thomas Tinsley was insolvent when it was executed. This deed was of date prior to the levy of the Corbett execution, but subsequent to the date of the judgment on which the execution issued. Corbett's title was assailed on the ground that the judgment upon which the execution issued was satisfied and discharged by sale of lands upon which liens were foreclosed therein, and that Corbett and Reichman, one of the defendants in the judgment, had conspired together to sacrifice said land and keep the judgment alive for the purpose of destroying Thomas Tinsley financially. The sale under this judgment of the land, upon which the lien was foreclosed for its satisfaction, was not directly attacked on the ground either of irregularity in the process or for inadequacy of price. It was shown, however, that this land was in value about equal to the judgment. The following is a brief history of this judgment:

C. S. Reichman sold to Charles Tinsley an undivided half interest in certain lands situated in Harris County, Texas, taking vendor's lien notes in payment therefor. Charles Tinsley sold this land to Thomas Tinsley, the latter assuming the payment of the outstanding vendor's lien notes held by C. S. Reichman. Reichman sold and transferred these notes to the Houston Land and Trust Company and guaranteed their payment. A partition was made between Reichman and Thomas Tinsley whereby a part of the land was set apart in severalty to him, the remainder to Reichman, and they agreed that the notes should bind only the part so set aside to Tinsley, but this agreement was not in such form as to bind the trust company holding the notes. Upon default as to these notes the trust company brought suit against Reichman and Charles and Thomas Tinsley and procured a judgment against them and a foreclosure of the lien upon the land. By the terms of this judgment the land was ordered sold, the tracts set apart to Thos. Tinsley to be first offered for sale, and if the bid therefor was not sufficient to satisfy the judgment, then to call off the sale and sell the undivided interest unaffected by the partition. A personal judgment was rendered against each of the defendants, but Reichman was held

secondarily liable as guarantor. with execution over against his codefend-
ants in case he had to pay the judgment.

Order of sale was issued as prescribed by the judgment and levied
on the lots set aside to Thomas Tinsley, but at the request of the-
trust company the sale was not made. The land was subsequently sold
under order of sale and appears to have been bought in by Reichman,.
the bid being credited on the judgment and the credit thus made-
amounting to $48. That Reichman purchased the land as just stated
appears by inference only, as the facts upon this point are by no means
clear. Reichman then went to the trust company and arranged to·
·buy the judgment and have it transferred to him. He then arranged to
sell to Corbett the land thus bought and the unsatisfied judgment for
enough money to pay the trust company. This arrangement was con-
sumated, the money paid by Corbett going directly to the trust com-
pany, the latter transferring· the judgment to Reichman and Reichman
transferring it to Corbett. Reichman stipulated with Corbett that he-
should be released from further liability on the judgment. It was for
the satisfaction of the balance due on this judgment that Corbett had.
execution issued and levied on the land in controversy.

Appellant objected to the introduction of this judgment in evidence,.
(1) because it was not shown that the land therein ordered sold was
ever sold in accordance with the terms of the judgment; (2) because
when Reichman paid its value to the trust company the judgment was
thereby discharged and satisfied; (3) because the stipulation in the
transfer to Corbett by which Reichman procured his release from further
liability thereon had the effect of releasing his codefendants.

The execution issued in behalf of Corbett purported to be the eighth
execution issued on said judgment. By official indorsements thereon
it appeared that an order of sale had issued and the proceeds of the
sale thereunder were duly credited. It showed other credits aggregating
$570.16, leaving a balance due on the judgment of $2022.19. We do not
think it was necessary in order to render the judgment admissible to
also introduce the order of sale and each previous execution. The in-
dorsements on the last execution disclosing the result of proceedings
under former process were required by law, were official in character,
and if untrue it devolved on the appellant to show their falsity. We
.are of opinion the objection in so far as it was based upon this ground
was not well taken.

The second ground of objection is alike untenable. Reichman was
adjudged liable as an indorsee. By the terms of the judgment he was
entitled to execution against his codefendants in case he paid the judg-
ment. He had the right to purchase at foreclosure sale, and the law
did not require that he assume any greater burden as a bidder thereat
than a stranger to the judgment wishing to bid on the land. If for want
of higher bids he bought at a bargain, he was entitled to such profit as
he could make out of the transaction. The right on his part to pay to
the trust company the balance due on the judgment and take a transfer

thereof was absolute. In the absence of a transfer such a payment would not have extinguished the judgment, for by its very terms its life was preserved for the benefit of Reichman. These propositions are too plain and well settled to require citation of authority in their support. That Reichman thereafter had the right to sell the land which he had purchased at foreclosure sale and the judgment also for enough to reimburse him for the purchase price and his outlay in settling with the trust company is too plain for dispute, and being the absolute owner of the judgment at that time his right to sell the judgment to Corbett without recourse on himself was equally clear.

It is further contended by appellant that the land sold under the order of sale was a trust fund sacred to the payment of the judgment and Reichman having himself become the purchaser was bound to use it for the satisfaction of the judgment and since it ultimately served this purpose the judgment was discharged, it being shown that Corbett had knowledge of the facts. Appellant in urging this proposition loses sight of the fact that the trust company judgment against Thomas and Charles Tinsley and Reichman was not a joint judgment. Reichman owed nothing to his codefendants. By the very nature of the judgment he was their adversary. What right had Thomas Tinsley (who had acquired the land and assumed the payment of the notes and who was primarily liable for their payment) to expect that Reichman would trouble himself or jeopardize his own interest to protect him, Thomas Tinsley? The latter had defaulted to Reichman as well as to the trust company, and by his failure to pay the notes had left Reichman to protect them. In doing so he had the right to protect himself. That Reichman when he purchased at foreclosure sale took the title to the land as against the Tinsleys, subject to be set aside only for irregularities or inadequacy of price, is clear, and the sale is not attacked upon these grounds.

It may be contended by appellant that Reichman exercised these rights in a harsh and unconscionable manner and that Corbett connived at it and profited by it, but such matters can not be complained of in a proceeding of this sort. It follows from what has been said that the court correctly admitted in evidence the judgment and execution in support of Corbett's claim under execution sale. It follows also that judgment was properly rendered in his favor unless the sale of the San Jacinto County land by Thomas Tinsley to G. W. Tinsley was a valid and bona fide sale.

Corbett contends that the sale was without consideration and the deed made at a time when Thomas Tinsley was notoriously insolvent. This deed was made between the date of the trust company judgment and the issuance and levy of the Corbett execution, and purported to convey two other tracts of land besides the one in question. G. W. Tinsley claims that the land was conveyed to him in satisfaction of a debt due by Thomas Tinsley to him amounting to $3000.

The following facts either directly or remotely tend to establish the invalidity of the transaction: Thomas Tinsley testified the land con-

veyed by the deed was worth $5000. The deed recited a consideration of $2000. The debt in discharge of which it was conveyed was placed by appellant at $3000. The deed was not placed of record for a year after its date. G. W. Tinsley at once executed a power of attorney to Thomas Tinsley empowering him to handle and control the land, and the latter was thus empowered when he first answered in this suit, yet he set up no defense for G. W. Tinsley and permitted judgment to be rendered against him as a nonresident. Though Thomas Tinsley was his attorney in fact and a codefendant in this suit and invested with the broadest power over these lands, he does not appear to have notified his absent brother of its pendency. Prior to the date of this deed Thomas Tinsley had executed a "blanket" deed to G. W. Tinsley for all his lands in Texas, these lands being scattered over many counties in the State and amounting to thousands of acres. G. W. Tinsley never rendered the land in question for taxes nor paid taxes thereon.

Thomas Tinsley in this suit answered for himself by general denial and plea of not guilty, when at that time he was authorized to act as attorney in fact for his brother. Thomas Tinsley at the date of this deed was insolvent. It would serve no useful purpose to review the evidence upon this latter point. Suffice it to say we have made such investigation as was possible in the confused and unsatisfactory state of the record, and have found no reason to disturb the finding of the court on the question of insolvency.

Thus we have an insolvent debtor conveying a large property to a near relative, the property in value grossly exceeding the recited consideration. When the issue of good faith is raised the vendee of the insolvent fails to testify. With this added to the suspicious circumstances above recited, we can not say that the trial court was not justified in refusing to credit the testimony of the insolvent as to the good faith of the transaction, especially when it is remembered that the opposing facts called for corroboration, and if it was in existence it could have been supplied by the testimony of G. W. Tinsley.

Appellant also complains because the court in hearing his motion for new trial reviewed the entire case and placed the burden of proof on him, whereas the burden in the first instance would have been upon Corbett. In motions such as the one in question, the "good cause shown," as required by the statute, necessitates the setting forth of facts which if true would require the setting aside of the judgment assailed and the rendition of a different judgment. It would be idle to set aside a judgment and retry a cause when no other result than the one already reached could be attained.

The allegations are not to be accepted as true, but may be controverted and evidence heard as to their truth. This course the trial court pursued and committed no error in so doing. Keaton v. Case, 31 S. W. Rep., 1099; Browning v. Pumphrey, 81 Texas, 166; O'Neil v. Brown, 61 Texas, 34.

The trial court did not place the burden of proof upon appellant.

The judgment distinctly states that appellee established his case by a preponderance of the evidence.

We do not deem it necessary to discuss the other assignments. They are without merit. Appellant's motion to correct the statement of facts which was submitted and taken with the case is overruled. Having found no reversible error in the record, the judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

Appellant complains of our finding that the deed of Thomas Tinsley to G. W. Tinsley, of date October 20, 1897, was not recorded until about a year after its date. The statement in the opinion is not accurate, as the deed was in fact recorded in San Jacinto County in February of the year following its date. It had been placed of record in another county shortly after its date. We were misled as to the state of the record on this point by a statement in the brief of appellee.

Appellant also complains of a statement in the opinion to the effect that appellee deraigned his title from the sovereignty of the soil. If the statement is not technically correct it is immaterial, as both parties claim under Thomas Tinsley, their immediate vendor. No point was made before this court involving an objection to the evidence either on the ground that Corbett failed to connect himself with the sovereignty of the soil or failed to show common source. Neither of these matters have any effect on the conclusion reached by us.

It is further urged that we erred in finding that Thomas Tinsley made a blanket deed to his brother covering all his lands in Texas. The deed spoken of was of date January, 1899; does not seem to have been adduced in evidence, and Thomas Tinsley in testifying about it says he can not say that it was not a blanket deed including all his lands in Texas. Thinks it specified the surveys and the grantee was his brother. He does not say how much land it covered. On page 108 of the record he leaves a like impression, and in his affidavit on motion for new trial he admits that the Comanche County deed contained expressions which were susceptible of such construction, but swore that he had no intention to make it a blanket deed. The Comanche County deed was not of date prior to the deed assailed in this suit but was subsequent thereto, and the expression in the opinion is erroneous to that extent. If such a deed in fact existed it could not affect the inquiry here except in so far as it might throw light upon the financial condition of Thomas Tinsley at the prior date, viz., October 20, 1897. We were undertaking to state in a general and cursory way some of the prominent facts disclosed by the record indicating insolvency. To indicate in this opinion the exact state of the record on the question would be next to impossible. We have seldom found a record so involved and confused. But the record itself is not more confusing than the testimony of Thomas Tinsley. He testifies to a vast number of tracts of land scattered over many counties

in the State. Nearly all of them have either been hypothecated or are affected by judgment liens. Many of them the witness knows little of, either as to the title or status as to liens. There are foreclosures through the courts with interest, costs, and attorneys fees; trustees sales out of court, with attendant costs, and through and over it all wanders the Beck judgment, the Houston Land and Trust Company judgment, and the Corbett judgment, seeking something belonging to defendant and subject to execution. This search according to Corbett extended over five years. According to Thomas Tinsley it resulted in the sacrifice of thousands of dollars' worth of his lands. If this deed to G. W. Tinsley is not set aside the judgment must go forth again seeking what of Thomas Tinsley's property it may devour. The record reeks with indications of the hopeless confusion and insolvency into which Thomas Tinsley's affairs had fallen. Yet counsel for appellant gravely insists not only that this court erred in refusing to disturb the judgment of the trial court, but that there is no evidence upon which to base such a finding. Counsel is surprised that the trial court did not credit the statement of appellant that he was worth thousands of dollars over his liabilities when one of his chief complaints was that a judgment which he had failed to pay was destroying him.

Had counsel for each side been more careful to be accurate in their statements, this court would have been spared much tedious labor and the errors pointed out in the motion would have been avoided. We have carefully considered the motion for rehearing, but have found no reason to change our conclusion as expressed in the original opinion. The motion is overruled.

*Overruled.*

Writ of error refused.