## SMALLEY v. OCTAGON OIL CO. et al.
### No. 1611.

Court of Civil Appeals of Texas. Waco.
April 25, 1935.

Rehearing Denied May 23, 1935.

Lashley & Rambo, of Tulsa, Okl., and Robt. B. Keenan, of Tyler, for appellant.

Thompson, Mitchell, Thompson & Young and P. G. McElwee, all of St. Louis, Mo., Campbell, Lee, Taylor & Leak, of Longview, and Wynne & Wynne, of Wills Point, for appellees.

GALLAGHER, Chief Justice.

This is an appeal from a judgment denying a new trial in a case in which service was had by publication. Appellees Octagon Oil Company, a corporation, and Shell Petroleum Corporation, sued appellant, T. B. Smalley, in the district court of Gregg county in trespass to try title to recover, subject to the owner's ⅛ royalty, the minerals in and under a certain 100-acre tract of land out of the William P. Chism survey in said county, and to remove as a cloud. on their title thereto the claims asserted by .appellant in a certain affidavit made by him and recorded in the deed records of said county, in which affidavit he stated that he was informed and believed that some interest in the mineral lease on said land had been conveyed by Shell Petroleum Corporation to F. J. Searight, and declared that said Searight held an undivided half interest in the same in trust for him. Appellant was duly cited by publication, and on June 8, 1932, judgment was rendered against appellant in favor of appellees for the recovery of the interest in said land so sued for and canceling said affidavit as a cloud upon their title thereto. The regularity of said proceeding is not assailed.

Appellant, on September 11, 1933, filed in said cause his petition for new trial under the provisions of article 2236 of our Revised Statutes. The court heard the evidence submitted in support of said petition, and on November 13, 1933, denied the same.

### Opinion.

Appellant submits several assignments, in each of which he complains of the action of the court in overruling his petition for a new trial. He submits thereunder propositions in which he contends that he was entitled to a new trial under the uncontradicted evidence. Consideration of such contention requires an extensive recital of the evidence.

The Shell Petroleum Corporation held an oil and gas lease on' the 100 acres of land out of the Chism survey involved in this suit. Said corporation, by an instrument dated June 4, 1931, but acknowledged by it on June 22, 1931, entered into a contract with F. J. Searight for the development of said tract, and also another tract of 106 acres situated on the D. Sanchez survey in said county. The tract on .the Chism survey is the only one involved in this suit. Said Searight, by the terms of said contract, assumed many onerous obligations. He agreed, among other things, to commence and spud in a well on the tract involved herein within 15 days from the date of the last acknowledgment of said contract (June 22, 1931), and on the other tract within 30 days from said date; to drill each of said wells with due diligence to a specified depth, unless oil or gas in paying quantities should be sooner found; to furnish, within 10 days from such acknowledgment, a surety bond in the sum of $60,000, conditioned upon the full and satisfactory compliance with all obligations assumed by him in connection with such drilling; to pay liquidated dam-

ages in the sum of $25,000 for each well in event he failed to commence and drill the same to completion in strict accord with the terms of such contract; and, in addition, to forfeit all rights in the tract or tracts with respect to which such default was made. Said corporation agreed, upon completion of the first well on each tract in accordance with the requirements of said contract, provided Searight had furnished the surety bond required as aforesaid, to execute and deliver to him an assignment of the lease thereon, reserving to itself an overriding royalty of ¼ of the ⅞ interest vested in it as original lessee.

Searight, on July 13, 1931, entered into a contract with Sparkman-Reusch Drilling Company, a corporation, by the terms of which said corporation agreed to immediately commence the drilling of a well on the tract here involved, in consideration of certain supplies and equipment to be furnished by him and his agreement, on receipt of an assignment of the lease provided for in his contract with Shell Petroleum Corporation, to immediately assign one-half of his rights thereunder to said drilling company. The next day the drilling company sublet the contract for the drilling of said well to F. E. Benson and D. F. O'Rourk, in consideration of the promise of the drilling company to furnish certain supplies and equipment needed in the prosecution of the work and to assign to them one-half of all interest in the lease to be acquired by it under its contract with Searight. While there is no direct testimony on the subject, from the evidence as a whole it may be reasonably inferred that a well was drilled on said tract of land and oil in paying quantities produced therefrom, and that Shell Petroleum Corporation executed and delivered an assignment of its lease to Searight, reserving the overriding royalty stipulated. Searight, on September 14, 1931, assigned to the Octagon Oil Company, a corporation, his 21⁄32 interest in an oil and gas lease on said tract of land. The testimony tended to show that some of the parties connected with the drilling of the well under the contracts aforesaid participated in the organization of said oil company and became directors thereof or stockholders therein.

Appellant was the only witness at the hearing on his petition. He testified, in substance, that he and Searight, both of whom resided in Tulsa, Okl., came to the East Texas field together for the purpose of procuring some desirable acreage for joint development for oil and gas; that various prospects were investigated without success; that finally he suggested that about a year before he had had business relations with the Shell Petroleum Corporation through its St. Louis office; that it was then agreed between him and Searight that they should meet in St. Louis and investigate the offerings, if any, of that corporation; that about the last of May, 1931, he for the first time learned that Searight was in St. Louis; that he immediately went there and found Searight, who informed him that he had already made a verbal agreement with said corporation, and that the same was then being reduced to writing; that he thought it would complicate matters if appellant's name were injected into the negotiations at that stage; that Searight finally exhibited the written contract so prepared to him and agreed to take it to Tulsa and have it examined by Mr. Tallman, his attorney; that Searight advised him later that the title had been approved; that Searight promised to meet him in Tyler in a few days, but failed to do so; that he shortly thereafter met him on the street in Tyler and made an appointment to meet him the next day; that Searight did not keep the appointment; and that he concluded that Searight was avoiding him and intended to exclude him from the benefits of said contract. Appellant further testified that he thereafter, on the 14th day of August, 1931, made an affidavit in which he stated that he and Searight were negotiating with the Shell Petroleum Corporation for an interest in a lease on the land here involved; that their interests were to be equal in the deal; that Searight suggested that such interest, if secured, should be taken in his name, but agreed that the same should be held for the use and benefit of both of them; that he was informed and believed that Searight had secured an interest in said lease, but had taken the same in his own name; and that said affidavit was made and filed to give notice of his one-half ownership therein. Said affidavit was acknowledged and duly filed for record with the county clerk of the county in which said land was situated. Appellant testified that he met Searight on the streets of Tulsa many times thereafter, but did not testify that he ever asserted to him any interest in said lease. He testified that he never contributed anything

whatever toward carrying out the contract made by Searight with the petroleum corporation. He did, however, testify that Searight claimed in that connection that he had incurred an expense of $287, and that he had offered him his check for one-half thereof, which he refused. Appellant admitted on cross-examination that some time in June, 1931, Searight sent him the following telegram: "If you are unable to raise money with your parties or put up some cash yourself before Monday, June 22nd, call the deal off. Not further interested in your trading propositions as I need some cash. Leaving for Tulsa now."

Appellant, in explanation of said telegram, testified that the reference to "trading propositions" contained therein meant efforts he had made to interest third parties in undertaking to carry out the contract when made. Apparently all such efforts were unsuccessful. Appellant further testified in that connection that he was willing to advance one-half of the money needed to carry out said contract, but that Searight wanted him to advance it all.

Article 2236 of our Revised Statutes provides, in substance, that, in cases in which judgment has been rendered on service of process by publication and the defendant has not appeared in person or by attorney of his own selection, a new trial may be granted by the court upon the application of the defendant for good cause shown. Good cause, as used in said statute, is shown in such cases when it is made to affirmatively appear that the defendant had no actual notice of the pendency of such suit, and that he has a meritorious defense to either the whole or a part of the cause of action asserted therein, the presentation of which would probably have resulted in the rendition of a different judgment. Kitchen v. Crawford, 13 Tex. 516, 522; Wiseman v. Cottingham, 107 Tex. 68, 72, 174 S. W. 281, 282; Dunlap v. Wright (Tex. Civ. App.) 280 S. W. 276, 277, par. 1. The burden of making such showing was, of course, on appellant. Tinsley v. Corbett, 27 Tex. Civ. App. 633, 66 S. W. 910, 913 (1st column) (writ refused); Bargna v. Bargna (Tex. Civ. App.) 127 S. W. 1156, 1158 (second column). The right asserted by him in the mineral estate in said land was an equity. The legal title had passed to the Octagon Oil Company. Appellant was therefore required, in order to prevail against it,

to show that it had notice of his claim, or that it did not pay a valuable consideration. Teagarden v. R. B. Godley Lumber Co., 105 Tex. 616, 154 S. W. 973, 974, par. 1; Elliott v. Wallace, (Tex. Com. App.) 59 S.W.(2d) 109, 111, par. 2; Delay v. Truitt (Tex. Civ. App.) 182 S. W. 732, 735, par. 8 (writ refused); Strong v. Strong (Tex. Civ. App.) 66 S.W.(2d) 751, 752, par. 1. Appellant wholly failed to show that the Octagon Oil Company had notice of the interest claimed by him in the mineral estate in said land when it purchased from Searight. His ex parte affidavit was not an instrument required or affirmatively permitted by law to be recorded, and the record thereof did not constitute constructive notice to the Octagon Oil Company of his claim. Burnham v. Chandler, 15 Tex. 441, 443; Wright v. Lancaster, 48 Tex. 250, 256, 257; Copelin v. Shuler (Tex. Sup.) 6 S. W. 668, 671; Uvalde Company v. Tribble (Tex. Civ. App.) 292 S. W. 932, 934, par. 3; Martin v. Cummer Mfg. Co. (Tex. Civ. App.) 259 S. W. 240, 244, par. 8; Hart v. Wilson (Tex. Civ. App.) 281 S. W. 339, 341, par. 4; Eubanks v. Wilson, 252 Ky. 110, 66 S.W.(2d) 65, 66, par. 2. We do not understand that appellant contends that there was any testimony showing the Octagon Oil Company did not pay a valuable consideration for the interest assigned to it by Searight.

Appellant's claim to an interest in the lease in controversy rests solely on his own testimony. The trial court, in determining the weight to be given thereto, had the right to consider his interest in the suit in connection with the evidence as a whole, salient portions of which have been hereinbefore set out. Appellant had no part in negotiating the contract with the Shell Petroleum Corporation. That contract involved the assumption by Searight of burdensome responsibilities, including the payment of liquidated damages in a large sum for failure to promptly execute the same. It was not actually acknowledged by the Shell Petroleum Corporation, and, we may assume, not delivered to Searight, until June 22, 1931. Prior to that time Searight had demanded financial assistance from appellant as a condition precedent to the recognition of an interest in him in said contract. Such demand was ignored. Searight alone assumed the obligations imposed by said contract, and he alone procured the performance thereof.

Appellant admits that he did not furnish either credit, money, property, or even effective aid in securing such performance. Except for the making and filing of his affidavit in August, 1931, he did not take any affirmative action to assert his rights in said lease until he filed his petition for new trial herein in September, 1933, more than two years thereafter. Appellant alleged in his petition that during all of said time oil had been produced and sold from said land, and apparently such was the fact. Appellant's failure during such period to take any steps to enforce his claims reasonably invoked an explanation. None was offered. The general rule as established by our Supreme Court is that the credibility of an interested witness and the weight to be given to his testimony are questions for the determination of the court or jury trying the case, notwithstanding such testimony may be uncontradicted and such witness unimpeached. Pope v. Beauchamp, 110 Tex. 271, 280, 219 S. W. 447; Houston, E. & W. T. Ry. Co. v. Runnels, 92 Tex. 305, 306, 307, 47 S. W. 971; Pridgen v. Walker, 40 Tex. 136, 139; Goodrich v. Pandem Oil Corporation (Tex. Com. App.) 48 S.W.(2d) 606, 609, par. 3; Thraves v. Hooser (Tex. Com. App.) 44 S.W.(2d) 916, 921, par. 4, and authorities there cited; Sigmond Rothchild Co. v. Moore (Tex. Com. App.) 37 S.W.(2d) 121, 122, par. 7; Stone v. City of Wylie (Tex. Com. App.) 34 S.W.(2d) 842, 845, par. 6; Farm & Home Sav. & Loan Ass'n v. Muhl (Tex. Civ. App.) 37 S.W.(2d) 316, 322, par. 18 (writ refused); Commercial State Bank v. Blackwell (Tex. Civ. App.) 61 S.W.(2d) 563, 566, par. 6, and authorities there cited; Shepherd v. Woodson Lumber Company (Tex. Civ. App.) 63 S. W.(2d) 581, 584, par. 7; Transcontinental Ins. Co. of New York v. Frazier (Tex. Civ. App.) 60 S.W.(2d) 268, 269, par. 4; American Surety Company v. Whitehead (Tex. Com. App.) 45 S.W.(2d) 958, 960, par. 3; Rodriguez v. Saegert (Tex. Civ. App.) 74 S.W.(2d) 171, 174, par. 3; Thomasson v. Davis (Tex. Civ. App.) 74 S.W.(2d) 557, 558, par. 1; Strickler v. Kassner (Tex. Civ. App.) 64 S.W.(2d) 1025, 1026, par. 3; White House Lumber Co. v. Denny (Tex. Civ. App.) 75 S.W. (2d) 709, 711, pars. 3 and 4; Texas Employers' Ins. Ass'n v. Hilderbrandt (Tex. Civ. App.) 62 S.W.(2d) 209, 210, par. 4; Mitchell v. Federal Mortgage Co. (Tex. Civ. App.) 45 S.W.(2d) 649, 650, par. 2; Fagg v. Benners (Tex. Civ. App.) 47 S. W.(2d) 872, 874, par. 6; Ætna Casualty & Surety Co. v. Tobolowsky (Tex. Civ. App.) 73 S.W.(2d) 556, par. 2. See, also, cases cited in Dunlap v. Wright (Tex. Civ. App.) 280 S. W. 276, 279 (first column).

The rule so announced is not, however, of universal application, and there is a line of decisions holding that, when the testimony of an interested witness is wholly uncontradicted, is clear, positive, and unequivocal on the point at issue, and there are no circumstances in evidence tending to discredit or impeach such testimony, conclusive effect should be given thereto. See Dunlap v. Wright (Tex. Civ. App.) 280 S. W. 276, 279, par. 6, and authorities there cited; Golden v. First State Bank (Tex. Civ. App.) 38 S.W.(2d) 628, 629, par. 1; McKeever v. Dittman (Tex. Civ. App.) 262 S. W. 1054, 1058, par. 3; Benn v. Security Realty & Development Co. (Tex. Civ. App.) 54 S.W.(2d) 146, 150, par. 5; Gardner v. Wesner (Tex. Civ. App.) 55 S.W.(2d) 1104, 1107, par. 7; Tarpley v. Epperson (Tex. Civ. App.) 50 S.W.(2d) 919, 920, par. 4; Western Shoe Co. v. Amarillo Nat. Bank (Tex. Civ. App.) 42 S.W.(2d) 469, 472, par. 3; Chesapeake & O. R. Co. v. Martin, 283 U. S. 209, 216 et seq., 51 S. Ct. 453, 456, pars. 8 and 9, 75 L. Ed. 983.

We have reached the conclusion, after careful consideration of the testimony of appellant in his own behalf, in connection with all the other testimony in the case, that the trial court was not required to hold as a matter of law that appellant had shown good cause for a new trial. His holding that such showing had not been made is therefore binding upon us, and the judgment is affirmed.