## GREAT SOUTHERN LIFE INS. CO. v. DOROUGH.

### No. 1776.

Court of Civil Appeals of Texas. Waco.

Nov. 19, 1936.

Rehearing Denied Jan. 28, 1937.

Vinson, Elkins, Weems & Francis and Fred R. Switzer, all of Houston, for appellant.

Claude Miller and George Clark, both of Waco, for appellee.

GALLAGHER, Chief Justice.

This suit was instituted by appellee, Shirley Dorough, against appellant, Great Southern Life Insurance Company, to recover on a policy issued by appellant on the life of A. B. Dorough, in which policy appellee was made beneficiary. Appellee alleged that the policy sued on was issued to said A. B. Dorough on November 10, 1927; that by the terms thereof appellant agreed, upon the death of the insured, to pay to her, as the beneficiary named therein, the sum of $1,000; that the insured died on December 12, 1933; that at the time of his death said policy was in full force and effect; and that she was entitled to recover the said sum of $1,000. She also alleged that she had made due proof of the death of the insured; that she had "kept all the terms and provisions contained in said policy"; that she had demanded payment more than thirty days before the filing of her petition; that payment had not been made, and that because of such default she was entitled to recover 12 per cent. of the face of the policy as statutory damages, and reasonable attorney's fees in the sum of $250.

Appellant denied appellee's right to recover, on the ground that while she was the wife of the insured at the time the policy was issued, she was divorced from him prior to his death. Appellant also pleaded that the policy sued on had lapsed

on July 20, 1932, because of the nonpayment of premiums, which was approximately one year and five months before the death of the insured.

The case was submitted to the court for determination and judgment rendered in favor of appellee against appellant for the face of the policy, less a loan found by the court to have been made thereon by appellant in the sum of $46.86, together with statutory damages and attorney's fees, amounting in the aggregate to $1,306.83. The court incorporated in said judgment a provision that the recovery awarded appellee was impressed with a trust for the benefit of those entitled to the estate of the deceased, and that when collected, the proceeds of such judgment should be deposited in the registry of the court subject to its further order.

## Opinion.

Appellant presents a group of propositions in which it contends that the judgment against it is neither supported nor warranted by the evidence. Appellee introduced the policy in evidence. It was dated November 10, 1927, and contained a provision requiring the payment of an annual premium of $27.81 on or before the 10th day of November of every year from and after the date thereof. She offered no testimony with reference to the payment of any premiums nor with reference to any loan on the policy, except a letter from appellant's vice president and actuary to her attorney. Said letter, so far as material to the issue under consideration, was as follows: "Our records indicate that Policy No. 42310-S, for $1000, was issued on November 10, 1927. Four and one half premiums were paid on this policy, carrying it to May 10, 1932, at which time there was a loan of $46.86 outstanding against the policy, and no further premiums were paid. There was, however, enough equity under the automatic premium loan provision of the policy to carry it in force to July 20, 1932, at which time it lapsed. At the time of lapsation there was no further value in the policy." The policy provided for the payment of premiums annually, semiannually, or quarterly; for thirty days' grace in the payment thereof; and that in default of the payment of any premium, the policy should become null and void except as otherwise provided therein.

One such other provision contained in the policy is entitled "Automatic Premium Loans." Since appellant's defense is based on this provision and the testimony of its witness tending to show compliance therewith, we here copy the same in full:

"I. Automatic Premium Loans—This policy *shall not lapse for non-payment of premium* after two full annual premiums shall have been paid hereon if the cash value of the policy *is in excess of all indebtedness against it, but shall be continued in force by the Company advancing a loan against the policy as herein provided.* In the event of non-payment of premium after two full annual premiums shall have been paid, *the Company will advance a loan against the policy to pay the premium in default if the cash value of the policy is sufficient to pay such premium* and all other indebtedness together with interest in advance at the rate of six per cent per annum on the total debt until the next premium due date. *The advance shall* always be made for an *annual premium* if the cash value of the policy is sufficient to secure such premium and all other indebtedness; but, when the cash value is not sufficient to secure an annual premium, the advance shall be made for a *semi-annual or quarterly premium,* whichever may be paid out of the then cash value of the policy. *If the value be less than sufficient to secure a quarterly premium* and all other indebtedness, *the advance shall be for the then full cash value of the policy* and *shall continue the insurance in force for such a fractional part of ninety days as the amount of the cash value* after deducting all indebtedness and *interest will pay on a quarterly premium basis,* and *at the expiration of said period the policy and all benefits thereunder* shall cease and terminate. No advance shall be made until the expiration of the grace period, but when made shall be for the period beginning with the due date of the unpaid premium. *Advances made under this provision shall be considered a loan against this policy and shall be subject to the same terms and conditions as any loan made* in accordance with the 'cash loan' provision below. *While the policy is continued in force as herein provided,* the insured may resume payment of premiums without medical examination and pay all or any part of the accumulated loan or *allow it to remain as a first lien against the policy."* (Italics ours.)

Appellant, in connection therewith, introduced its permanent record which showed the issuance of said policy, the payment of premiums thereon, and under the cap-

tion "Policy Loans," two separate charges against the same. Said record showed that the first three premiums were paid thereon annually without default; that the premium due November 10, 1930, amounting to $27.81, was received January 10, 1931, two months after the time the same was due; and that under the caption "Policy Loan," $29.50 was charged against said policy on the same day. Said sum was the exact amount of the premium due November 10, 1930, with the addition of 6 per cent. interest thereon for one year. Appellant's witness Chedester testified that he was manager of the department in charge of collection of premiums; that said record was the original, made under his direction at the respective times indicated, and that the same was correct; that such entries showed that the first three annual premiums were paid in cash; that the loan shown thereon as aforesaid in the sum of $29.50, of date January 10, 1931, included the fourth annual premium in the sum of $27.81 as aforesaid, with interest thereon in advance to November 10, 1930; that said sum was applied to the payment of the fourth premium; that said entry and application were not made sooner because of a custom to make every effort to collect in cash before making a loan. The policy fixed the amount of a semiannual premium at $14.46. Said record showed that such a premium was received on January 8, 1932, and under the caption "Policy Loans," $46.86 was charged against the policy on the same day. Said last-recited sum was the exact amount of the former charge against the policy, plus such semiannual premium and interest on the entire amount to November 10, 1931. Appellant's said witness testified that said sum of $14.46 was appropriated to the payment of a semiannual premium on the policy for the period beginning November 10, 1931; that the remainder of the additional charge was interest which, by mistake, was calculated for a whole year instead of six months; that the reason a semiannual premium was credited at said time was that the cash or loan value of the policy, after deducting the charge of January 10, 1931, as aforesaid, was not sufficient to pay an annual premium; that the remainder of the cash or loan value on May 10, 1932, was not sufficient to pay even a quarterly premium or to justify a bookkeeping entry and the said policy was marked "lapsed" on May 10, 1932, but that the small remainder of the cash or loan value of the policy at the time, after making due allowance for the mistaken overcharge of interest, was sufficient to carry the policy in force only until July 20, 1932, at which time it actually lapsed and liability thereon, under the terms thereof, ceased. Said witness further testified that in July, 1932, he signed and mailed to the insured a letter announcing that the policy had lapsed and asking him to take steps to reinstate the same.

Briefly summarized, the evidence above recited shows that the original policy contract required appellant, in case of default in the payment of any premium, independent of any demand, request, or agreement on the part of the insured, to advance out of the loan value of the policy a sufficient sum to pay the same, and to continue to make such advances as succeeding premiums fell due and default was made in the payment thereof, until the loan value was exhausted, and when so exhausted, such policy should lapse and all benefits thereunder should terminate. Such facts further show that the policy provided in express terms that the sum so advanced should be considered a loan against the policy and constitute a prior lien thereon. Appellant's testimony showed that it conformed to the terms and requirements of said automatic premium loan provision in the policy; that the fourth premium and the first half of the fifth premium on the policy were advanced by it after default by the insured, as a charge against the loan value of the policy; that there remained of such value only a sufficient sum to keep the policy in force until July 20, 1932. There is nothing in the testimony as a whole that is either contradictory or inconsistent therewith. The record evidence corroborated the verbal testimony of appellant's witness Chedester.

We think that since appellant's witness Chedester was its employee, he should be considered an interested witness. The general rule as established by our Supreme Court is that the credibility of an interested witness and the weight to be given his testimony are questions for the determination of the court or jury trying the case, notwithstanding such testimony may be uncontradicted and such witness unimpeached. Smalley v. Octagon Oil Co. (Tex.Civ.App.) 82 S.W.(2d) 1049, 1053 (1st column), and authorities there cited. The rule so announced is not, however, of universal application, and when the testi-

mony· of an interested witness is wholly uncontradicted, is clear, positive, and unequivocal· on the point at issue, and there are no circumstances in evidence tending to. discredit or impeach such testimony, conclusive effect should be given thereto. Trinity Gravel Co. v. Cranke (Tex.Com. App.) 282 S.W. 798, 801, par. 5; American Surety Co. v. Whitehead (Tex.Com.App.) 45 S.W.(2d) 958, 961 (1st column) and authorities there cited; Gulf, C. & S. F. Ry. Co. v. Downs (Tex.Civ.App.) 70 S.W. (2d) 318, 321, par. 2 (writ refused); Benn v. Security Realty & Development Co. (Tex.Civ.App.) 54 S.W.(2d) 146, 150, par. 5 (writ refused); M. H. Thomas & Co. v. Hawthorne (Tex.Civ.App.) 245 S.W. 966, 972 et seq., pars. 3 and 4 (writ refused); Dunlap v. Wright (Tex.Civ.App.) 280 S. W. 276, 279, par. 6, and authorities there cited; Smalley v. Octagon Oil Co., supra, 82 S.W.(2d) 1049, at page 1053 (second column), and authorities there cited; Chesapeake & O. R. Co. v. Martin, 283 U.S. 209, 216 et seq., 51 S.Ct. 453, 456, pars. 8 and 9, 75 L.Ed. 983; Butterworth v. France (Tex.Civ.App.) 66 S.W.(2d) 369, 371, par. 3; Still v. Stevens (Tex.Civ. App.) 13 S.W.(2d) 956, par. 2; Texas State Mutual Fire Ins. Co. v. Farmer (Tex.Civ.App.) 83 S.W.(2d) 411, 412, par. 1; Golden v. First State Bank of Bomarton (Tex.Civ.App.) 38 S.W.(2d) 628, 629, par. 1; Western Shoe Co. v. Amarillo Nat. Bank (Tex.Civ.App.) 42 S.W.(2d) 469, par. 3; Sterling Nat. Bank & Trust Co. v. Ellis (Tex.Civ.App.) 75 S.W.(2d) 716, 720, par. 16; Northern Texas Traction Co. v. Nicholson (Tex.Civ.App.) 188 S.W. 1028, par. 5; Springfield Fire & Marine Ins. Co. v. Cameron & Co. (Tex.Civ. App.) 96 S.W.(2d) 788, 790, par. 2. See, in this connection, Western Union Telegraph Co. v. Gardner (Tex.Civ.App.) 278 S.W. 278, par. 7; Stanolind Oil & Gas Co. v. Simpson-Fell Oil Co. (Tex.Civ.App.) 85 S.W.(2d) 325, 331, par. 7. The rule of conclusive effect announced in the authorities above cited is of course further strengthened when the testimony of the interested witness is, as in this case, affirmatively corroborated by other facts and circumstances in evidence. Shaw v. San Jacinto Realty Co. (Tex.Civ.App.) 16 S.W.(2d) 341, 345, par. 6; Gulf, C. & S. F. Ry. Co. v. Leatherbury (Tex.Civ.App.) 259 S.W. 598, par. 4; Metropolitan Life Ins. Co. v. Wann (Tex.Civ.App.) 81 S.W. (2d) 298, 301, pars. 2 and 3; 41 Tex.Jur. p. 942, § 172. Even though the court or jury trying the case may be authorized, under the rules announced in the cases above cited, to disbelieve and· reject the uncontradicted testimony of an interested witness on a particular issue and refuse to make a finding in accord therewith, neither court nor jury can, under such circumstances, without other evidence, make a finding of an affirmative fact diametrically opposed to such testimony. Sterling Nat. Bank & Trust Co. v. Ellis, supra; Miller v. Panhandle & S. F. Ry. Co. (Tex. Civ.App.) 35 S.W.(2d) 194, 202 (top 1st column), and authorities there cited; San Jacinto Rice Co. v. Ulrich (Tex.Civ.App.) 214 S.W. 777, par. 4; Hall Music Co. v. Robinson (Tex.Civ.App.) 7 S.W.(2d) 625, 626, par. 6. We therefore conclude that the trial court was not authorized to disregard the testimony aforesaid and to render a judgment contrary thereto.

We will briefly consider the contentions insisted upon by appellee as sufficient to support the judgment. Appellee's basic contention is that the advancements made to pay the fourth annual premium and the ensuing semiannual premium could not be charged against the cash or loan value of the policy, because no written assignment of the policy to secure the same was shown, and that on May 10, 1932, such loan or cash value was sufficient to entitle the insured to extended term insurance beyond his death. Subsidiary thereto, appellee contends that the fact that the charges against the policy shown by the record in this case as aforesaid were entered under the caption of "Policy Loans" and referred to as such by the witness was sufficient to support an inference that said charges were "cash loans," as distinguished from automatic premium loans. The policy contained the following provision:

"2. Cash Loans—At any time after the payment of premiums.for two years and while this policy is in full force, the insured can borrow from the Company upon the sole security of this policy and proper assignment thereof any amount within the loan value stated in the 'table of loan and surrender values' opposite the year for which the premium has been paid, subject to the deduction of all existing indebtedness to the Company on this policy."

This provision clearly affects only loans made by appellant to the insured negotiated and· consummated by mutual agreement subsequent to the issuance of the policy. A comparison thereof with the automatic

premium loan provision above quoted shows that both premium loans and cash loans might with equal propriety be called "Policy Loans." The mere fact that the charges against the policy were entered under the caption of "Policy Loans" cannot therefore be said to indicate to which class such charges belonged. There is no affirmative testimony and no circumstance in evidence sufficient to support an inference that said two charges against the policy in this case were the result of subsequent specific agreements; that the insured, on each of said occasions, personally negotiated a cash loan contract with appellant; that each such contract was actually consummated and the proceeds of such loans applied to the payment of said respective premiums long after the periods of grace for the payment of the same had expired. See, in this connection, Kansas City Southern Ry. Co. v. Carter (Tex.Civ. App.) 166 S.W. 115, 121, pars. 8 et seq.; Texas & N. O. Ry. Co. v. Warden, 125 Tex. 193, 78 S.W.(2d) 164, 166, pars. 4 and 5, and authorities there cited; Baker v. Loftin (Tex.Com.App.) 222 S.W. 195, 197, pars. 3 and 4, and authorities there cited; Metropolitan Casualty Ins. Co. v. Texas Sand & Gravel Co. (Tex.Civ.App.) 68 S.W.(2d) 551, par. 11; Green v. Texas & P. Ry. Co., 125 Tex. 168, 81 S.W.(2d) 669, 673, pars. 1 to 4, inclusive, and authorities there cited; Baylor University v. Chester Savings Bank (Tex.Civ.App.) 82 S.W.(2d) 738, 746, pars. 11 and 12, and authorities there cited.

■ Appellee further insists in this immediate connection that the automatic payment of said premiums out of the cash or loan value of the policy would have been inconsistent with such value as stated in the policy, in that such loan value, after the payment of the third premium, was only $25, when the advancement to pay the fourth premium thereon, as shown by the record, was $29.50. The policy showed affirmatively that the cash value of the same after. the payment of the third premium thereon was $25; after the payment of the fourth premium thereon, $40; and after the payment of the fifth premium thereon, $57. It further provided that due allowance should be made for the payment of semiannual or quarterly premiums beyond a policy year. Therefore, when the fourth premium was paid, as indicated by the testimony in this case, the policy immediately had a cash or loan value of $40, which was more than the charge of $29.50

made against it at the time and coincident with such payment. When the subsequent semiannual premium was paid, as indicated by the testimony in this case, the policy immediately had a cash or loan value of approximately $47.50, which was more than the total charge of $46.86 made against it at the time and coincident with such payment, notwithstanding such charge included by mistake excessive interest, as hereinbefore explained. Under the express terms of the automatic premium loan provisions of the policy, appellee was required to advance a loan against the policy "to pay the premium in default." We find nothing in the policy indicating that the provisions thereof with reference to cash or loan values were not applicable to the payment of any premium thereon after the second, whether such payment was made in cash or by an advancement out of the loan value of the policy under the automatic premium loan provisions thereof. The fact that appellant, on this issue, construed such related provisions of the policy in harmony with each other and most favorably to the continuance of the policy in full force and effect, is, in our opinion, insufficient, under the authorities above cited, to support an inference that the two loans charged against the policy were not made under the original terms thereof, expressed in the automatic premium loan provision contained therein, but were made in pursuance of subsequent contracts.

■ Appellee contends, in the alternative, that even if said two premiums were in fact paid under the automatic premium loan provision of the policy, the amount thereof could not be charged against the loan value of. the policy nor affect its availability as a basis for extended term insurance, because separate assignments of the policy to secure the same were not shown. By the express terms of the automatic premium loan provision of the policy, advances to pay premiums in default, such as were made in this case, until repaid, constituted a "first lien against the policy." Such lien being fixed by the terms of the original policy contract, a subsequent written assignment was not required. Such an assignment, involving and requiring a voluntary affirmative act on the part of the insured, would have been inconsistent with the automatic character of the transaction. This case is distinguishable from the case of Amicable Life Ins. Co. v. White (Tex.Civ.App.) 38 S.W. (2d) 860, 862, cited by appellee, by the

fact that in that case no automatic premium loan provision was involved. The indebtedness to the company was evidenced by a note, signed by the insured, and the court held: "In the absence of a provision in the policy of insurance * * * securing the premium note with the reserve in the policy * * * that the appellant would be unauthorized to use the reserve for that purpose." See, in this connection, Pacific Mutual Life Ins. Co. v. Thurman (Tex.Com.App.) 89 S.W.(2d) 202; Texas Life Ins. Co. v. Cork (Tex.Com.App.) 89 S.W.(2d) 779. Regardless, however, of the existence of a lien to secure the advancements made by appellant to satisfy premiums in default, the policy expressly provided that when the entire cash value thereof had been so applied, all liability thereon on the part of appellant should cease.

The automatic premium loan provision was the primary means provided by the policy contract for securing to the insured the application of the cash value of his policy to the extension of the life thereof in case he made default in the payment of premiums. He was not, however, restricted to the benefits secured by this provision. The policy in another provision thereof gave the insured a right within thirty days after default in the payment of any premium, at his option, to surrender the policy and receive (a) the cash value thereof; (b) a paid-up policy for a stipulated amount; or (c) to have an indorsement placed on the policy converting it into extended term insurance for a stipulated period. There is no contention that any such options were exercised. So far as shown, the insured acquiesced in the application of the cash value of his policy at the time he made default to the payment of succeeding premiums as they accrued under the automatic permium loan provision thereof.

Appellant presents a group of propositions in which it contends that the testimony is insufficient to support the recovery of the statutory damages and attorney's fees awarded appellee. We have carefully read the statement of facts and have failed to find any definite testimony showing that demand was made upon appellant for the payment of the policy. Merely forwarding proofs of death or filing suit does not constitute a sufficient demand to invoke the application of such penalties. Washington Fidelity National

Ins. Co. v. Williams (Tex.Com.App.) 49 S.W.(2d) 1093, 1094, pars. 3 and 4, and authorities there cited.

The judgment of the trial court is reversed and the cause remanded.